[No. 17122-4-I. Division One. August 10, 1987.]

LYNNE H. LEVINSON, *Appellant,* v. THE HORSE RACING
COMMISSION, *Respondent.*

*James E. Lobsenz* and *Wolfe & Cullen,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Larry Watters, Assistant,* for respondent.

*David F. Stobaugh* on behalf of the American Civil Liberties Union and *Pamela J. Hinrichs* on behalf of Northwest Women's Law Center, amici curiae for appellant.

DORE, J.*—Lynne Levinson appeals a Superior Court order affirming the Washington Horse Racing Commission's revocation of her racehorse ownership license. She claims that the fact that her husband was disqualified from racehorse ownership should not prevent her from keeping her ownership license.

### FACTS

Lynne Levinson married Alex Shriber on October 15, 1981. Levinson continued to use her maiden name on all legal documents, except her driver's license, and apparently never held herself out publicly as married. She claims that her bank account is separate from her husband's and that she receives a significant amount of money from an inheritance from her father.

Levinson had worked at Longacres periodically for the past few racing seasons. Sometime in 1983, she decided to buy a racehorse, apparently with her separate property, and she applied for the required racehorse ownership license. On her application, she listed herself as single, principally she claims for personal reasons, as well as the fact that her husband provided no money and exercised no control over the horse. Significantly, at a later hearing the Horse Racing Commission did not enter a finding of fact that her false

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Judges Pro Tempore in Division One.

response as to her marital status was intended to deceive the Commission.

On August 1, 1983, the Horse Racing Commission issued her an owner's license. Shortly thereafter, Levinson's husband, Alex Shriber, was observed at Longacres. In 1971, at the age of 22, Shriber had been convicted of selling heroin. He completed a 6–month jail sentence and a 10–year suspended sentence without any further convictions. Pursuant to WAC 260–12–160, Shriber was ejected from the racecourse in August 1983 and has been considered disqualified from ever having an owner's license.

The Board of Stewards subsequently suspended Levinson's owner's license on September 15, 1983, on the basis of Shriber's narcotics conviction. WAC 260–40–160(3) provides that neither spouse may race horses if either one is disqualified, which Shriber was by virtue of his narcotics conviction. The Horse Racing Commission affirmed the Board of Stewards' ruling on the bases of the spousal disqualification and Levinson's misrepresentation of her marital status. Levinson appealed to the Superior Court, which affirmed the Horse Racing Commission's decision. Levinson now appeals to this court.

### INFRINGEMENT ON THE RIGHT TO MARRY

WAC 260–12–160 disqualifies any person from remaining on the race course property if he or she has a prior narcotics conviction. This regulation, as well as WAC 260–36–120(2), evidently was used by the Horse Racing Commission to classify Shriber as a disqualified person. The Commission also considered Levinson a disqualified person pursuant to WAC 260–40–160(3), which states that "[n]o entry [of a horse in a race] shall be accepted from husband or wife, while either is disqualified." Levinson challenges her disqualification pursuant to this section as an unconstitutional infringement on the right to marry.

 The right to marry is a fundamental constitutional right. *See, e.g., Maynard v. Hill,* 125 U.S. 190, 31 L. Ed. 654, 8 S. Ct. 723 (1888); *Griswold v. Connecticut,* 381

U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965). The State may interfere with that right, but as the Supreme Court stated in *Zablocki v. Redhail,* 434 U.S. 374, 388, 54 L. Ed. 2d 618, 98 S. Ct. 673 (1978), "[w]hen a statutory classification significantly interferes with the exercise of [the right to marry], it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."

The Commission argues that the goal of maintaining the integrity of horse racing is a sufficiently important state interest which justifies prohibition of spouses of narcotics felons from owning race horses. The Commission points to the decision of the Louisiana Supreme Court in *Pullin v. State Racing Comm'n,* 477 So. 2d 683, 687 (La. 1985). In *Pullin* the court held "[s]ince the state has such a strong interest in assuring the honesty of horse racing, licenses can be subject to terms and conditions which might be inappropriate in another context."

Furthermore, in *Durham v. State Racing Comm'n,* 458 So. 2d 1292 (La. 1984), the Louisiana Supreme Court upheld the constitutionality of a regulation almost identical to the one at issue here. The *Durham* court upheld the denial of a license to the wife of a trainer whose license had earlier been revoked. The court held "[m]arital status is relevant in determining eligibility for a horse racing license, because of the likelihood that one spouse may aid another in circumventing sanctions imposed by the Racing Commission." *Durham,* at 1294. The Horse Racing Commission urges us to follow the Louisiana court's logic.

■ We decline to do so. While the Horse Racing Commission undoubtedly has a compelling interest in maintaining the integrity of horse racing, the proper test is whether or not it has adopted rules and regulations tailored to meet that goal. Regulations having an indirect effect on marriage universally require more than just a rational relationship between the state interest and the regulation imposed, *see, e.g., Zablocki v. Redhail, supra; Califano v. Jobst,* 434 U.S. 47, 54 L. Ed. 2d 228, 98 S. Ct. 95 (1977); *Mathews v. De*

*Castro,* 429 U.S. 181, 50 L. Ed. 2d 389, 97 S. Ct. 431 (1976); *Druker v. Commissioner,* 697 F.2d 46 (2d Cir. 1982), although the Commission can impose rules on reasonable factual assumptions, which need not be accurate in every case. *Jobst,* at 53.

We do not believe the Commission's regulations are carefully tailored to meet the admittedly legitimate aim of protecting the integrity of horse racing, and we therefore hold the regulations invalid as applied to the facts of this case. We do so for a number of reasons. First of all, the regulation disqualifying Levinson's husband (and therefore, indirectly disqualifying Levinson) is very sweeping. WAC 260–12–160[1] provides

No person who has been convicted for illegal possession, sale or giving away of any narcotic or controlled substance shall be permitted on the grounds of an association, except by permission of the board of stewards.

This regulation, therefore, applies to people like Shriber who many years after their conviction still cannot attend racing events, and cannot get ownership licenses. *See also* WAC 260–36–120.

We seriously question the extent to which the integrity of the horse racing profession would in fact suffer from a person's ownership of a racehorse license 12 years after a narcotics conviction. Furthermore, while the need for integrity in the horse racing profession is clear, so is the need for rehabilitation, as the Legislature determined by enacting RCW 9.96A.020. This statute provides in part:

Notwithstanding any other provisions of law to the contrary, a person shall not be . . . disqualified to practice, pursue or engage in any occupation, trade, vocation, or business for which a license, permit, certificate or registration is required to be issued by the state of Washington or any of its agencies or political subdivisions solely because of a prior conviction of a felony: *Provided,*

---

[1]This regulation has subsequently been amended to prevent the Board of Stewards from giving permission to narcotics felons to attend racing events. See State Register 86–04–042 (1986).

This section shall not preclude the fact of any prior conviction of a crime from being considered.

RCW 9.96A.050 further provides that RCW 9.96A.020 "shall prevail over any other provisions of law which purport to govern the denial of licenses . . . on the grounds of a lack of good moral character . . ." Thus, Shriber's disqualification, although only indirectly before this court because of its effect on Levinson, on one hand may marginally serve the interest of maintaining integrity in the profession, but on the other hand it certainly runs afoul of the equally strong public policy expressed in RCW 9.96A.020 of rehabilitating convicted felons.

Moreover, the draconian effect of the spousal disqualification regulation is particularly evident in this case. There was no evidence presented which indicates that Levinson applied for a license to evade the regulations which would have disqualified her husband. In fact, from the evidence presented, nothing could be further from the truth. Levinson allegedly did not even know of her husband's past conviction. She apparently did not use community funds to purchase the horses. She did not hold herself out to the public as a married woman. Her husband apparently played no role in the ownership, maintenance or training of the horses.

The spousal disqualification regulation as applied in this case infringes on Levinson's right to marry, while at the same time, it offers little protection to the integrity of the horse racing profession. Without some evidence in a hearing showing that Levinson's ownership of the horse was merely a prop to evade regulations which preclude her husband from racehorse ownership, we do not believe that the Commission can revoke her license. Any such blanket regulation violates the constitutional requirement that an infringement on the right to marry be narrowly tailored to meet the state interest involved.

## LEVINSON'S INTEGRITY

Levinson does not dispute the fact that she put a false

answer regarding her marital status on her application form. The Horse Racing Commission ruled, and the Superior Court affirmed, that this misrepresentation justified the revocation of her license because it demonstrated that she did not possess the necessary integrity required to race horses pursuant to WAC 260–36–130. Levinson makes two challenges to this conclusion.

First, Levinson challenges the procedure the Commission used to revoke her license. She claims, for the first time in her reply brief, that she was never given proper notice that the Commission intended to consider the question of sanctioning her for her misrepresentation on the application. Levinson contends this failure to give proper notice violated her constitutional due process guaranties, and that the Commission cannot revoke her license solely on the basis of this misrepresentation.

█ The Washington Supreme Court has long required that licensing commissions may only revoke a license if they comport with procedural due process requirements. *Lewis v. Department of Motor Vehicles*, 81 Wn.2d 664, 504 P.2d 298 (1972); *Reagles v. Simpson*, 72 Wn.2d 577, 434 P.2d 559 (1967). This procedural due process guaranty includes "an opportunity to know the claims of opposing parties and to meet them; and a reasonable time for preparation of one's case." *Rody v. Hollis*, 81 Wn.2d 88, 93, 500 P.2d 97 (1972), quoting *Cuddy v. Department of Pub. Assistance*, 74 Wn.2d 17, 19, 442 P.2d 617 (1968). *See also Marysville v. Puget Sound Air Pollution Control Agency*, 104 Wn.2d 115, 702 P.2d 469 (1985). Moreover, Levinson's failure to raise this constitutional notice issue until her reply brief does not bar this argument. In *State v. Kitchen*, 46 Wn. App. 232, 730 P.2d 103 (1986), this court specifically held that constitutional issues may be raised in the reply brief. *See also Conner v. Universal Utils.*, 105 Wn.2d 168, 712 P.2d 849 (1986) (a constitutional issue may be raised as late as during a motion for reconsideration from a Court of Appeals decision).

The Commission argues that Levinson had actual notice

that the Commission intended to consider whether her misrepresentation merited any sanction. The Commission points to the fact that Levinson's counsel presented evidence regarding her marital status, and that in a letter to the Commission after the hearing, counsel indicated that her misrepresentation on the application form was not intended to deceive anyone.

■ We do not believe that these facts show Levinson had actual notice at the time of the hearing that the Commission intended to pursue this charge against her. Notice must be sufficiently accurate to prevent the case from being decided on unexpected grounds if undue surprise or prejudice would result. *Marysville*, at 119. Here, when the Board of Stewards issued a preliminary ruling revoking her license, it based its decision solely upon WAC 260–40–160(3), the spousal disqualification section. Clerk's Papers, at 17. The Commission in issuing a "notice of hearing" to review the Board of Stewards' ruling, stated that the only issues involved were:

(1) Did Lynne H. Levinson violate WAC 260–40–160(3) [spousal disqualification]? (2) Were there any mitigating circumstances that should be considered? (3) What should the proper penalty be if there was a violation?

Notice of Hearing; Clerk's Papers, at 3–4. At no point prior to the hearing did the Horse Racing Commission indicate that it would consider the question of what sanction Levinson deserved for her misrepresentation on the application. Moreover, had Levinson known of this issue prior to the argument before the Commission, she could have supplied additional documentation to the Commission showing that she always used her maiden name and considered herself single with regard to financial endeavors. Notice in this case was inadequate.

Moreover, we have serious reservations about the Commission's decision on the merits to revoke Levinson's license because of her misrepresentation. WAC 260–36–060(3) states, in part, that: "Ability as well as integrity

must be clearly shown by the applicant in order to receive recommendation for the granting of the license." While it is true that Levinson misrepresented her marital status, it is by no means clear that this impugns her integrity. At the time of her license application, her husband was in good standing at Longacres (despite its knowledge of his narcotics arrest), she claims not to have known about his conviction, and she generally held herself to be single on a variety of legal documents.

Nevertheless, we cannot determine from the record before us whether, from all the circumstances presented to the Commission, Levinson in fact possesses the necessary integrity to race horses. We therefore remand to the Commission to make this determination on a rehearing after proper notification is given to Levinson.

## ATTORNEY FEES

Levinson has asked this court to award her attorney fees pursuant to 42 U.S.C. § 1988 (1976). This statute provides in part that a party seeking relief against a violation of constitutional rights under color of state law may receive reasonable attorney fees. Levinson contends that since the Commission, a state agency, infringed on her right to marry, she should receive such a fee award.

We disagree. Levinson has not brought this action under 42 U.S.C. § 1983 *et. seq.,* but rather, as an appeal of an administrative decision pursuant to RCW 34.04.130. Neither RCW 34.04.130 nor the statutes or regulations surrounding the Horse Racing Commission authorize an award of attorney fees, and therefore, we deny her request for such an award. *See Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 417, 645 P.2d 693 (1982).

## CONCLUSION

The Superior Court order in favor of the Commission is reversed. The case is remanded to the Commission solely to

determine whether Levinson possesses the necessary integrity to race horses.

HOLMAN and REVELLE, JJ. Pro Tem., concur.

Reconsideration denied November 9, 1987, and February 2, 1988.