[No. 36581-9-I. Division One. August 11, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. WWJ CORPORATION, ET AL., *Appellants*.

*William M. Wood, James E. Lobsenz,* and *Carney, Badley, Smith & Spellman,* for appellants.

*Christine O. Gregoire, Attorney General,* and *David M. Horn, Deputy,* for respondent.

BAKER, C.J. — WWJ Corporation, d/b/a Mountain Pacific Mortgage, William Johnson, and the marital community of William and Rosemary Johnson appeal a civil penalty of $500,000. The penalty was imposed for 250 separate violations of the Mortgage Broker Practices Act, RCW chapter 19.146, which were per se violations of the Consumer Protection Act (CPA), chapter 19.86 RCW. For the first time on appeal, appellants contend that the civil penalty violates the Eighth Amendment's prohibition of excessive fines and the Fourteenth Amendment's due process prohibition against the arbitrary and capricious deprivation of property. Johnson and the marital community further contend that the court erred in holding them liable because no evidence supported the finding that Johnson participated in or knew of the violations.

We decline, however, to reach the constitutional challenge to the civil penalty because we can resolve this appeal without reaching the constitutional issues and no persuasive reason is presented for us to consider these issues for the first time on appeal. The trial court's imposition of a civil penalty within statutory limits is reviewed for an abuse of discretion. On the facts of this case, we find no abuse of discretion. We also hold that the trial court did not err in imposing liability upon Johnson and the marital community because sufficient undisputed evi-

dence supports that determination. We therefore affirm the summary judgment.

## FACTS

Johnson was the sole owner and president of WWJ, a mortgage brokerage business that prepared consumer loan applications to be submitted to lenders for financing or refinancing residential real property. Preparation of these applications involved assembling information from consumers and third-party service providers (including appraisers and credit reporting agencies) regarding the consumer's collateral and creditworthiness. The consumers paid WWJ deposits for the costs of these third-party services.

The State's consumer protection office filed a complaint against WWJ, Johnson, and his marital community.[1] The State alleged that WWJ and Johnson violated the Mortgage Broker Practices Act, constituting per se violations of the CPA, by (1) misrepresenting interest rates in its advertisements, (2) engaging in bait-and-switch sales tactics, (3) failing to place client funds in trust accounts, (4) failing to pay third-party service providers, (5) failing to provide good-faith estimates before closing, and (6) failing to refund fees. The State sought an injunction against these activities, an order for restitution, assessment of civil penalties of $2,000 for each violation, and attorney fees.

Appellants denied most of the allegations. Johnson admitted, however, that he brokered mortgages as manager or sole shareholder (with his wife) of WWJ. Further, WWJ and Johnson admitted that from January to June 1992, supervisors and loan officers in their employ failed to place client funds in trust accounts as legally required.

The State moved for summary judgment, supporting its

---

[1]An amended complaint added the DMG corporations. DMG withdrew its appeal upon filing for bankruptcy protection, and that portion of this appeal has been mandated.

motion with (1) bank records detailing the account violations, and (2) evidence showing that WWJ and Johnson were not registered mortgage brokers, that WWJ kept inadequate records, that the accounts were not trust accounts, that consumers did not receive required refunds for application fees, and that third-party service providers were not paid.

Appellants presented no evidence in response to the summary judgment motion. At the hearing, their attorney asserted that the records did not clearly show violations and the court should not necessarily award the maximum penalty for each violation. But their counsel admitted that the bank accounts were not trust accounts, that some customer deposits were not timely made, and that WWJ and Johnson violated record keeping requirements.[2]

The State argued that the documents supported each of the alleged violations and that its estimate of the number of violations was conservative because it did not include each separate trust account violation. The State asserted that the civil penalty should be calculated based upon the established facts that violations continued after the suit was filed, individual consumers were harmed, and the public was potentially harmed. The State also asserted that the civil penalty promoted the goals of the CPA to deter such behavior, eliminate the benefits of improper acts, and vindicate the State's authority to protect the public.

In granting summary judgment and issuing the injunction, the trial court noted that appellants' argument was inadequate to controvert the facts established by the State's evidence. The court observed that both before and after the suit was filed, Johnson moved from entity to entity engaging in the same improper practices.

From the uncontroverted facts submitted by the State, the trial court found that WWJ, Johnson, and the community (1) wrote 67 checks from commingled accounts

---

[2]We note that counsel on appeal did not represent appellants before the trial court.

containing customer funds for noncustomer purposes, (2) deposited 182 customer checks for third-party services into nontrust accounts, (3) failed to designate and maintain accounts that were exempt from garnishment for client funds, (4) failed to deposit client funds within 24 hours, (5) failed to pay for third-party services or refund client deposits, and (6) failed to maintain books and records.[3] The court ordered $32,254 in restitution for those clients and third-party service providers who filed complaints with the State. The court enjoined WWJ and Johnson from engaging in specific improper practices, and awarded the State attorney fees and costs.

The trial court also imposed a civil penalty of $500,000. In calculating this penalty, the trial court considered the number of violations, their interrelationship, the amount from customer funds that was not used for customer benefit, the continued blatant disregard for the law, the lack of good faith, and the potential injury to the public. The court noted that the potential for damage to the public was severe at the time of these violations because numerous people were then looking for low-cost mortgages and refinancing. The court also wanted to eliminate the benefit that was received from these improper practices. Based on these considerations, the trial court assessed the maximum penalty allowed by the CPA, $2,000 for each of the 250 documented violations.

## ANALYSIS

At issue here is the validity of the trial court's calculation of the civil penalty imposed upon WWJ, Johnson, and the marital community. A violation of the Mortgage Broker Practices Act is an unfair or deceptive

---

[3]The trial court entered these findings with the order on summary judgment to comply with the requirements for entering an injunction in CR 65(d). These findings are superfluous to our de novo review of the summary judgment. *See Redding v. Virginia Mason Med. Ctr.*, 75 Wn. App. 424, 426, 878 P.2d 483 (1994) (reviewing court may disregard findings of fact entered on summary judgment because no such findings are required). But our independent review of the record indicates that each of the findings is supported by uncontroverted evidence.

trade or practice in violation of the CPA, triggering assessment of civil penalties up to $2,000 per violation.[4] Each improper act or class of improper acts is a violation.[5] The CPA permits the trial court to assess a penalty for each violation.[6] We review the trial court's assessment of civil penalties within such statutory limits for an abuse of discretion.[7]

■ For the first time on appeal, WWJ, Johnson, and the community contend that the $500,000 civil penalty violated federal constitutional prohibitions against excessive fines and the arbitrary and capricious deprivation of property.[8] The State argues that they cannot now raise them for the first time. We agree.

■ In general, we do not review constitutional issues that were not raised before the trial court unless they involve the denial of a fundamental constitutional right in a criminal proceeding or it affects the court's jurisdiction.[9] In civil cases, we have declined to address constitutional issues that are raised for the first time on appeal unless

---

[4]*See* RCW 19.146.100, 19.86.020, 19.86.140. Generally, violations of the Mortgage Broker Practices Act are misdemeanors; however, violations of the trust account provisions are class C felonies. RCW 19.146.110; 19.146.050. A class C felony is punishable by up to five years in prison, or by a fine of up to $10,000, or by both. RCW 9A.20.021.

[5]*State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 317, 553 P.2d 423 (1976) (*Ralph Williams'* II), *appeal dismissed*, 430 U.S. 952 (1977).

[6]*Ralph Williams'* II, 87 Wn.2d at 317.

[7]*See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 229 n.6, 95 S. Ct. 926, 43 L. Ed. 2d 148 (1975) (reviewing lower court assessment of civil penalty within statutory limits for Federal Trade Commission Act violation for abuse of discretion); *see also Progressive Animal Welfare Soc'y v. University of Wash.*, 114 Wn.2d 677, 683-84, 688-89, 790 P.2d 604 (1990) (reviewing trial court's calculation of attorney fees mandated by statute for abuse of discretion) (*PA WS*).

[8]For the first time in their reply brief, WWJ, Johnson, and the community argue that the fine was also excessive under art. I § 14 of the state constitution. We decline to address the merits of this argument because we do not consider arguments raised for the first time in a reply brief. *See State v. Clark*, 124 Wn.2d 90, 95-96 n.2, 875 P.2d 613 (1994) (court refused to consider state constitutional argument first raised in reply brief).

[9]*Rismon v. State*, 75 Wn. App. 289, 294, 877 P.2d 697 (1994) (citing *Aripa v. Department of Soc. & Health Servs.*, 91 Wn.2d 135, 141, 588 P.2d 185 (1978)).

they involve the court's jurisdiction.[10] Because neither of these reasons is present here, we do not address the constitutional issues.

Nevertheless, WWJ, Johnson, and the community contend that we should review the constitutional issues because the civil penalty (1) constituted punishment, and was therefore criminal or at least quasi-criminal, (2) was of constitutional magnitude, and (3) violated procedural due process, which can be raised for the first time on appeal. We do not find these arguments to be persuasive.

First, our supreme court has held that the Legislature has broad discretion in choosing remedies to promote compliance with the law, that imposition of a fine in a civil proceeding does not turn it into a criminal or penal proceeding, and that the imposition of civil penalties under the CPA does not make the act or the penalty quasi-criminal.[11] Even though a civil penalty under the CPA punishes, it also promotes compliance with the law without becoming a criminal or quasi-criminal punishment.

Second, although appellate courts analyze whether an error is of constitutional magnitude in criminal cases, such that it may be argued for the first time on appeal, this case does not involve a criminal or quasi-criminal penalty.[12] Thus, no such review is required.

Third, while our courts have held that procedural due process challenges can be raised for the first time on appeal, those cases have involved challenges to the ade-

[10]*Northlake Marine Works, Inc. v. City of Seattle*, 70 Wn. App. 491, 512-13, 857 P.2d 283 (1993).

[11]*State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 278, 510 P.2d 233, 59 A.L.R.3D 1209 (1973) (*Ralph Williams'* I).

[12]*See State v. Scott*, 110 Wn.2d 682, 685-91, 757 P.2d 492 (1988) (criminal case discussing when instructional error not raised below warrants review as constitutional error; holding that court must examine whether error is truly of constitutional magnitude (manifest), and if so, whether error is harmless).

quacy of notice to the defendant.[13] No lack of notice existed here. Both the complaint and the motion for summary judgment notified the parties that the State sought the maximum statutory penalty for each of the 250 violations. Appellants have provided no persuasive reason for us to reach the constitutional issues it raises for the first time on appeal.

The trial court's assessment of this civil penalty was guided by the CPA (permitting a maximum of $2,000 per violation) and by case law (holding that each improper act is a separate violation).[14] The court's reasoning was supported by the record and was cogent. The trial court's exercise of discretion within these limits was neither erroneous nor an abuse of discretion.[15]

 Johnson and the marital community also argue that insufficient evidence existed to hold them liable. We disagree. Generally, to impose liability on an individual corporate officer, evidence must exist that he or she participated in or knew of the wrongful conduct.[16]

The record contains uncontroverted evidence that Johnson both knew of and participated in the violations, which is sufficient to hold both Johnson and the marital community liable. In his answer, Johnson admitted that he was the president of WWJ and that he and his wife were the sole shareholders of WWJ. Johnson also pre-

---

[13]*See Conner v. Universal Utils.*, 105 Wn.2d 168, 171-74, 712 P.2d 849 (1986) (addressing denial of procedural due process raised first in appeal if it is manifest error affecting constitutional right; holding that due process is violated only when defendant not apprised of judgment sought, but not violated here because complaint provided adequate notice); *State v. Santos*, 104 Wn.2d 142, 145-48, 702 P.2d 1179, 70 A.L.R.4TH 1021 (1985) (addressing denial of procedural due process affecting fundamental right regarding parent-child relationship when child not provided with notice of paternity proceeding; holding that notice required to give meaningful opportunity to be heard); *Levinson v. Washington Horse Racing Comm'n*, 48 Wn. App. 822, 828-29, 740 P.2d 898 (1987) (addressing denial of due process notice in license revocation; holding that inadequacy of notice can be raised at any time).

[14]*See* RCW 19.86.020, 19.86.140; *Ralph Williams' II*, 87 Wn.2d at 317.

[15]*Continental Baking*, 420 U.S. at 229 n.6; *PAWS*, 114 Wn.2d at 688-89.

[16]*Ralph Williams' II*, 87 Wn.2d at 322.

sented no evidence controverting the State's evidence that he participated in the improper handling of client funds, including writing checks from accounts with client funds for improper purposes, such as paying the rent on his apartment. Based upon the evidence, the trial court did not err in imposing liability on Johnson and the marital community.

Affirmed.

Cox and ELLINGTON, JJ., concur.

After modification, further reconsideration denied November 21, 1997.

Review granted at 136 Wn.2d 1027 (1998).