91 P.3d 875 (2004)
151 Wash.2d 664
CITY OF REDMOND, Appellant,
v.
Dean A. MOORE, Respondent.
City of Redmond, Appellant,
v.
Jason D. Wilson, Respondent.
No. 72614-1.
Supreme Court of Washington, En Banc.
Argued February 12, 2003.
Decided June 3, 2004.
Reconsideration Denied August 24, 2004.
*877 Richard Mitchell, Redmond, for Appellant.
Cherilyn Church, Donna Kay Tucker, Bellevue, for Respondent.
Sharon Sullivan Eckholm, Wash. Atty. General/Lic. & Emp., Olympia, for Amicus Curiae (Dept. of Licensing).
*876 SANDERS, J.
This case consolidates direct review of two separate district court orders dismissing charges against Dean Moore and Jason Wilson for driving while license suspended. In both cases the district court concluded mandatory suspension of their licenses pursuant to RCW 46.20.289 violated procedural due process because Moore and Wilson were not afforded an administrative hearing by the Department of Licensing (DOL) before or after the effective date of the suspensions. By implication the district court's orders also invalidated RCW 46.20.324(1), which provides that a person shall not be entitled to an administrative hearing when the license suspension or revocation is mandatory. We affirm the district court and hold RCW 46.20.289 and .324(1) violate due process.

FACTS
DOL issued Wilson an "Order of Suspension" on December 23, 1998, effective January 22, 1999, for failure to appear, pay, or comply with a traffic infraction notice for speeding. The order provided:
TO AVOID SUSPENSION, YOU MUST RESOLVE ALL CHARGES ON THIS CITATION WITH THE COURT INDICATED BELOW AND THE DEPARTMENT MUST RECEIVE PROOF FROM THE COURT BEFORE 01-22-1999 THAT THE CHARGE(S) HAVE BEEN RESOLVED. QUESTIONS REGARDING THE CITATION AND/OR FINE SHOULD BE DIRECTED TO THE COURT LISTED BELOW.
Clerk's Papers (CP) at 68. The City of Redmond (City) Police Department cited Wilson on March 18, 1999, for driving while license suspended.
On November 17, 1999, DOL issued Moore an order of suspension for failure to appear, pay, or comply with a traffic infraction notice for driving without liability insurance, effective December 17, 1999. His order contained the same language cited above. Moore was cited on May 3, 2001, for driving while license suspended.
The City charged both Wilson and Moore with driving while license suspended in violation of RCW 46.20.342(1)(c). Although Moore and Wilson filed separate motions to dismiss the charges, they appeared before the same district court, were represented by the same counsel, and raised identical arguments. The district court held a hearing on April 9, 2002, to consider both motions. Concluding the suspensions did not comply with due process because DOL failed to provide an opportunity for an administrative hearing either before or after the effective date of the suspensions, the court dismissed the charges.
The City sought and received this court's direct review of the consolidated cases.

STANDARD OF REVIEW
We review issues regarding statutory construction de novo. State v. J.M., 144 *878 Wash.2d 472, 480, 28 P.3d 720 (2001). Constitutional challenges are questions of law and are also reviewed de novo. Weden v. San Juan County, 135 Wash.2d 678, 693, 958 P.2d 273 (1998).

ANALYSIS
DOL suspended both Moore and Wilson's driver's licenses pursuant to RCW 46.20.289. That statute provides in relevant part:
The department shall suspend all driving privileges of a person when the department receives notice from a court ... that the person has failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation, other than for a standing, stopping, or parking violation. A suspension under this section takes effect thirty days after the date the department mails notice of the suspension, and remains in effect until the department has received a certificate from the court showing that the case has been adjudicated.
Additionally RCW 46.20.324(1) provides:
A person shall not be entitled to a driver improvement interview or formal hearing as hereinafter provided:
(1) When the action by the department is made mandatory by the provisions of this chapter or other law.
As a threshold matter we must first determine whether Moore and Wilson present a facial or an as-applied challenge to the constitutionality of RCW 46.20.289 and.324(1). An as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional. Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n, 141 Wash.2d 245, 282 n. 14, 4 P.3d 808 (2000). Holding a statute unconstitutional as-applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated. Id. In contrast, a successful facial challenge is one where no set of circumstances exists in which the statute, as currently written, can be constitutionally applied. Id. (citing In re Det. of Turay, 139 Wash.2d 379, 417 n. 27, 986 P.2d 790 (1999)). The remedy for holding a statute facially unconstitutional is to render the statute totally inoperative. Turay, 139 Wash.2d at 417 n. 27, 986 P.2d 790.
Here Moore and Wilson contend that mandatory suspension of a driver's license, pursuant to RCW 46.20.289, without granting an administrative hearing violates due process. They argue due process requires DOL provide the opportunity for an administrative hearing to resolve potential ministerial errors in the record, such as misidentification, miscalculation of the fine, or errors in the conviction form. They also do not challenge the factual basis for their suspensions.[1] The essence of their argument is that RCW 46.20.289 violates due process because it fails to afford any driver facing a suspension of his or her license under that statute an opportunity for an administrative hearing with DOL prior to or after such suspension. Accordingly, Moore and Wilson challenge the constitutionality of RCW 46.20.289, and by extension, .324(1).
It is well settled that driver's licenses may not be suspended or revoked "`without that procedural due process required by the Fourteenth Amendment.'" Dixon v. Love, 431 U.S. 105, 112, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (quoting Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)); City of Redmond v. Arroyo-Murillo, 149 Wash.2d 607, 612, 70 P.3d 947 (2003). An important corollary to this *879 rule is that a driver cannot be convicted of driving while his or her license is suspended or revoked if the suspension or revocation violates due process. State v. Dolson, 138 Wash.2d 773, 783, 982 P.2d 100 (1999). Though the procedures may vary according to the interest at stake, "[t]he fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).
To determine whether existing procedures are adequate to protect the interest at stake, a court must consider the following three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Governments interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews, 424 U.S. at 335, 96 S.Ct. 893, cited in Tellevik v. Real Property, 120 Wash.2d 68, 78, 838 P.2d 111 (1992).
The first Mathews factor requires identification of the nature and weight of the private interest affected by the official action challenged. The private interest in this case is the driver's interest in the continued use and possession of a driver's license. Depriving a person of the use of his or her vehicle can significantly impact that person's ability to earn a living. See Bell, 402 U.S. at 539, 91 S.Ct. 1586. Moreover the State "will not be able to make a driver whole for any personal inconvenience and economic hardship suffered by reason of any delay in redressing an erroneous suspension through postsuspension review procedures." Mackey v. Montrym, 443 U.S. 1, 11, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). As such, the United States Supreme Court has made clear that a driver's interest in his or her driving privileges "is a substantial one." Id.; Dolson, 138 Wash.2d at 776-77, 982 P.2d 100 (recognizing "[a] driver's license represents an important property interest").
Additionally "[t]he duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved." Mackey, 443 U.S. at 12, 99 S.Ct. 2612. Under RCW 46.20.289 a person whose license has been erroneously ordered suspended receives notice that his or her license will be suspended 30 days from the date of the notice. He or she is not, however, offered any procedure to contest the suspension other than being instructed by the notice to resolve the matter with the court. The public is left to its own devices to secure a timely hearing from a court to reverse the error before the suspension takes effect. The statute, however, provides no guaranty such a hearing will take place promptly. See RCW 46.20.289. Once a suspension takes effect, it remains in effect until the driver can resolve the matter with the court. Id. Thus the duration of an erroneous suspension under RCW 46.20.289 is dependent on the time it takes to get a court to reverse the error.
The second Mathews factor is the risk of erroneous deprivation of the interest at stake through the procedures used and the probable value, if any, of additional or substitute safeguards. Warner v. Trombetta, 348 F.Supp. 1068 (M.D.Pa.1972), aff'd, 410 U.S. 919, 93 S.Ct. 1392, 35 L.Ed.2d 583 (1973), cited by both parties, is directly on point. There the plaintiff pleaded guilty to hit and run. Id. at 1070. Pursuant to a Pennsylvania statute that required the department of transportation to suspend a driver's license upon proof the driver had been convicted of hit and run driving, the plaintiff's license was revoked for one year. Id. After the one-year period expired the Pennsylvania Department of Transportation refused to reinstate his license because he could not show he was financially capable of paying for car insurance. Id.
The plaintiff sought to invalidate the statute under which his license had been revoked because it did not require the agency to offer *880 an administrative hearing. Id. at 1069. The Pennsylvania Department of Transportation argued procedural due process does not necessitate an administrative hearing prior to suspension where suspension is mandated regardless of fault. Id. at 1071. The court rejected this argument, noting that even if the underlying conviction itself cannot be contested, there still remained the possibility of error, including misidentification of the infractor, miscalculation of the fine by the court, and errors on the report of conviction form. Id. It concluded:
The fatal defect in the statute at bar is that there is no provision made for any type of administrative hearing with notice and an opportunity to be heard before the revocation action becomes effective. Hence, the possibility exists that error in a conviction record could result in the revocation of the license of an innocent motorist. Under these circumstances, we conclude that the essentials of due process require the opportunity for some sort of meaningful administrative hearing prior to the revocation of an operator's license.
Id. (emphasis added). However, Warner limited the scope of the administrative hearing to ministerial matters; the department of transportation was not required to provide a party an additional opportunity to dispute guilt. Id.
Wilson and Moore argue RCW 46.20.289, like the statute invalidated in Warner, subjects drivers to unreasonable risks of error. In their respective motions to dismiss they attached as exhibits documents pertaining to nonparties to illustrate the difficulties facing drivers when there is no opportunity for an administrative hearing.[2] These exhibits provide telling examples of the significant risk of error under RCW 46.20.289.
The record indicates DOL erroneously suspended the driver's license of one person for eight months after it was misinformed by the court that he had been convicted of driving under the influence. The record also indicates another person had his license erroneously suspended after having been falsely identified by the court as the recipient of an unpaid speeding ticket. Despite his best efforts, the wrongly suspended driver could not get a hearing from the court to correct the matter until over a month after his license had been suspended.[3]
What is more, unlike chapter 46.20 RCW, the statute invalidated in Warner provided a postdeprivation right to appeal from suspension. See 75 Pa. Stat. Ann. § 620 ("Any person whose operator's license or learner's permit has been suspended, or who has been deprived of the privilege of applying for an operator's license or learner's permit under the provisions of this act, shall have the right to file a petition, within thirty (30) days thereafter, for a hearing in the matter in the court of common pleas of the county in which the operator or permittee resides ...."), repealed by Act 1967, June 17, P.L. 162 (July 1, 1977). Parties could obtain a stay of suspension until the appeal had been heard. See, e.g., Commonwealth v. Scavo, 206 Pa.Super. 544, 214 A.2d 309 (1965) (upon notice of appeal, driver obtained an order of supersedeas to stay suspension of his license pending outcome of appeal); see also In re Turney, *881 44 Pa.Cmwlth. 333, 403 A.2d 1350, 1351 (1979) (noting the driver's notice of suspension provided the following guaranty: "`You have the right of Appeal to the Court of Common Pleas of the County wherein you reside within thirty (30) days of receipt of this notice. Notice to this Department of timely Appeal will stay the action herein set forth pending final outcome of the Appeal.' "). RCW 46.20.289 provides no such appeal process and even if a court schedules a hearing to correct an alleged error, it is unclear whether it has the authority to stay the suspension pending the outcome of the hearing. Thus, the challenged provisions of the statute in this case offer far fewer procedural guaranties of due process than the statute invalidated in Warner.
With regard to risk of error, DOL notes it issued 386,114 notices of suspension in 1999, 401,471 in 2000, and 391,265 in 2001, based on information it received from the courts. Although the record does not include statistical evidence of the rate of error, the record does provide the illustrative examples of errors discussed above. Those examples, taken in conjunction with the sheer volume of information DOL receives from the courts, weigh heavily in favor of Moore and Wilson's argument that the risk of error under the current legislative scheme is substantial.[4]
Nevertheless the City maintains there was no due process violation because Moore and Wilson, like all drivers who have their license suspended under RCW 46.20.289, had an opportunity to be heard at their respective court hearings on the underlying violation. But as Moore and Wilson argued below, that court hearing does not address ministerial errors that might occur when DOL processes information obtained from the courts pertaining to license suspensions and revocations, e.g., misidentification, payments credited to the wrong account, the failure of the court to provide updated information when fines are paid. They argue the State would not be unduly burdened if either DOL provided administrative hearings or the legislature amended the statute to authorize courts, rather than DOL, to suspend or revoke a driver's license pursuant to a conviction.
The City argues the types of errors raised are to be anticipated in any clerical action, and procedural due process does not require procedures "`so comprehensive as to preclude any possibility of error.'" Br. of Pet'r at 13 (quoting Mackey, 443 U.S. at 13, 99 S.Ct. 2612). The City cites Mackey for the proposition that the mere possibility of error does not constitute a violation of due process. However, Mackey is inapposite.
Mackey upheld a Massachusetts statute mandating suspension of a driver's license for refusing to take a breath-analysis test upon arrest for operating a motor vehicle while under the influence of intoxicating liquor. Mackey, 443 U.S. at 19, 99 S.Ct. 2612. But there the statute entitled the driver to an immediate postsuspension hearing before the Registrar of Motor Vehicles to correct clerical errors and to seek prompt resolution of any factual disputes as to the accuracy of the officer's report. Id. at 7 n. 5, 99 S.Ct. 2612. Unlike the statute in Mackey, chapter 46.20 RCW does not authorize DOL to provide any administrative hearings to persons subject to a mandatory suspension or revocation of their license.
The City further suggests the current statutory scheme provides persons subject to an allegedly erroneous license revocation or suspension an opportunity to be heard because they may request a record review or informal hearing before DOL. However it acknowledges DOL cannot alter its order of suspension or revocation until it receives updated information from the district court. Moreover, an adverse decision in an informal hearing is not an appealable action. Cf. RCW 34.05.570.
The City also argues such persons may apply to the court for relief from a judgment due to a clerical error under CrRLJ 7.8, file *882 a writ of review, a writ of mandamus, or seek an injunction against DOL. Although these methods may bring relief from clerical errors and misidentification, they are costly, time consuming, and burdensome, and should be discounted. See Fuller v. Oregon, 417 U.S. 40, 54, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) (noting imposition of a cost upon the exercise of the right to a hearing is impermissible if it has the primary purpose of penalizing those who choose to exercise their constitutional rights). Moreover, the notices of suspension do not advise the drivers of the alternative procedures or remedies the City suggests.
Finally, the third Mathews factor requires consideration of the State's interest in the fiscal and administrative burden that additional or substitute procedural requirements would entail. Nguyen v. Dep't of Health Med. Quality Assurance Comm'n, 144 Wash.2d 516, 532, 29 P.3d 689 (2001). Rather the City cites Stauffer v. Weedlun, 188 Neb. 105, 195 N.W.2d 218 (1972), for the proposition that a State's interest may be sufficient to overcome the risk of wrongly terminating a driver's license.
In Stauffer the Nebraska Supreme Court upheld the constitutionality of a statute which provided for mandatory revocation of a driver's license upon accumulation of 12 or more traffic violation points, without providing prior notice and a hearing. 195 N.W.2d at 221. The court upheld the statute reasoning the risk of erroneous deprivation was minimal because the statute provided for an immediate appeal in district court and authorized the judge to stay revocation pending the outcome of the appeal. Id. at 223. The court found, on the other hand, that the State had a "compelling public interest in removing from the highways those drivers whose records demonstrate unsafe driving habits." Id. at 224. The minimal risk of error combined with the compelling State interest in promoting public safety, the court reasoned, outweighed the need for notice and a hearing prior to the revocation. Id.
The public safety interest present in Stauffer is not at issue here. The State's interest in suspending an individual's driver's license for failing to appear, pay, or comply with a notice of traffic infraction is in the efficient administration of traffic regulations and in ensuring offending drivers appear in court, pay applicable fines, and comply with court orders. Although undoubtedly important, this interest does not rise to the level of the State's compelling interest in keeping unsafe drivers off the roadways. Simply put, failing to resolve a notice of traffic infraction does not pose the same threat to public safety as habitually unsafe drivers do.
In its amicus brief DOL claims it will incur significant fiscal and administrative burdens if it is required to provide an administrative hearing for drivers who receive suspension notices under RCW 46.20.289. The potential cost to the State is not proved on this record, although DOL alleges that providing an opportunity for such a hearing would increase its workload and mandate the hiring of additional staff to process the hearings. While this may be true, the burden on the State is worthy of consideration but in itself not controlling. We are not persuaded that the burden of providing hearings to those individuals whose licenses have been ordered suspended under RCW 46.20.289 outweighs the risk of error and the benefit of providing hearings with DOL to correct potential ministerial errors.
Therefore we hold RCW 46.20.289 and.324(1) are contrary to the guaranty of due process because they do not provide adequate procedural safeguards to ensure against the erroneous deprivation of a driver's interest in the continued use and possession of his or her driver's license. As such, because a driver cannot be convicted of the offense of driving while license suspended where the suspension violates due process, Dolson, 138 Wash.2d at 783, 982 P.2d 100, the trial court properly dismissed the charges against Moore and Wilson.

CONCLUSION
The district court is affirmed.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN and CHAMBERS, JJ.
*883 BRIDGE, J. (dissenting).
The majority seizes upon the scant record in these cases to answer a question that has not been raised by any party and in so doing stretches the requirements of due process beyond precedent and common senseestablishing no clear benefit to licensees and burdening an administrative system designed by the legislature to provide swift determination for the protection of the motoring public.
There are three potential categories of license holders affected by license suspensions under RCW 46.20.289:(1) those whose licenses are lawfully suspended because they have failed to respond to notice of a traffic infraction or citation, including Dean Moore and Jason Wilson; (2) those whose licenses are suspended erroneously due to a ministerial error committed by the Department of Licensing (DOL) because of erroneous transfer of information into DOL records; and (3) those whose licenses are suspended erroneously due to an error committed by the court, including misidentification, miscalculation of fines, or clerical error in information transferred from the court to DOL. The district court in this case did not hold that due process requires a judicial hearing as to whether a driver actually failed to appear, pay, or comply prior to suspension, nor do Moore and Wilson assert such a right before this court. Moore and Wilson contend only that DOL should be required to provide administrative hearings before a license may be suspended pursuant to RCW 46.20.289 and.324(1)a procedure which could impact only the second category of suspended licenses, to which Moore and Wilson do not belong. Thus, the only issue presented in this case is whether DOL violated due process by failing to provide an administrative hearing prior to suspension of a license based on the failure to appear, pay, or comply. Under the Eldridge balancing test, resolution of this issue depends in part upon the degree to which presuspension DOL hearings would actually benefit licensees. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
Neither the majority nor the parties have explained how DOL, as an executive agency, could have the power to correct court error. Even if DOL could ignore a court judgment and stay suspension until resolution of the error, Moore and Wilson have presented only two anecdotal examples of drivers who may have benefited from such a stay. Given the very high burden that a challenger must overcome to render a statute facially unconstitutional, Moore and Wilson have not established that there exists sufficient risk of error to justify the opportunity for a DOL hearing for all drivers who face impending license suspension for failure to appear, pay, or comply. Therefore, I cannot agree with the majority's conclusion that the application of the Eldridge balancing test results in the facial unconstitutionality of RCW 46.20.289 and .324(1).[1]

Application of the Eldridge Test
This court applies a very high burden to facial constitutional challenges.[2] Statutes *884 must be shown to be unconstitutional beyond a reasonable doubt. Citizens for Responsible Wildlife Mgmt. v. State, 149 Wash.2d 622, 631, 71 P.3d 644 (2003). Washington has adopted the rule that "a facial challenge must be rejected if there are any circumstances where the statute can constitutionally be applied." Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n, 141 Wash.2d 245, 282 n. 14, 4 P.3d 808 (2000); Tunstall v. Bergeson, 141 Wash.2d 201, 221, 5 P.3d 691 (2000) (quoting In re Det. of Turay, 139 Wash.2d 379, 417 n. 27, 986 P.2d 790 (1999)). Thus, in order to hold that a statute is facially unconstitutional, this court must be convinced beyond reasonable doubt that there exists no set of circumstances under which the statute in question would be constitutional. Citizens, 149 Wash.2d at 631, 71 P.3d 644; Tunstall, 141 Wash.2d at 221, 5 P.3d 691. Assumptions or hypotheses about the potential unconstitutionality of a statute are not enough.
When the State seeks to deprive a person of a property interest, due process requires that pursuant to RCW 46.20.289 an individual receive notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Eldridge, 424 U.S. 319, 96 S.Ct. 893. The record in this case shows that drivers (including these drivers) receive notice of a pending suspension for failure to appear, pay, or comply on a citation in the form of a letter from DOL. The letter provides a 30-day grace period before the suspension takes effect. The letter also gives an address and phone number of the applicable municipal court so that the driver can contact the court with questions regarding the citation or the fine.[3] Finally, the letter provides the phone number for the DOL agent handling the case. Moore and Wilson argue that these avenues for error correction are insufficient, and they were also entitled to an opportunity for a DOL hearing on the issue of their failure to appear, pay, or comply, prior to any suspension.
The Eldridge balancing test is applied to determine whether RCW 46.20.289 and.324(1) are facially unconstitutional because they do not provide for a DOL presuspension hearing. See Eldridge, 424 U.S. at 335, 96 S.Ct. 893; In re Det. of C.W., 147 Wash.2d 259, 277, 53 P.3d 979 (2002) (applying the Eldridge test). Under Eldridge, courts must balance three factors to determine the process due in a particular situation: (1) the private interest that will be affected by the governmental action, (2) the risk of erroneous deprivation and the probable value of requiring additional procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens that additional procedural safeguards would entail. 424 U.S. at 335, 96 S.Ct. 893.
Private Interest: Under the first Eldridge factor, we consider the nature of the individual's interest at stake. Id. A driver's interest in continuing to hold a valid license is undoubtedly strong. In Mackey v. Montrym, 443 U.S. 1, 11-12, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the United States Supreme Court recognized that a driver's interest in the continued possession and use of his or her license is a "substantial one." However, the length of the suspension is a factor to be considered in determining the strength of the interest. Id. at 11-12, 99 S.Ct. 2612. Under RCW 46.20.289, the length of the suspension is not fixed, but instead it ends either when the license holder adjudicates the case or pays the fine, or when a mistake is corrected, causing the court to issue a certificate to DOL indicating that the case has been resolved. Furthermore, the existence of a strong individual interest is not determinative; even where a strong interest exists, courts have been willing to hold that the other Eldridge factors outweigh the first, such that additional procedural safeguards are not necessary to satisfy due process. See, e.g., Mackey, 443 U.S. at 11-19, 99 S.Ct. 2612; Mentor v. Nelson, 31 Wash.App. 615, 619-20, 644 P.2d 685 (1982) (holding additional *885 administrative hearing was not necessary before driver's license could be suspended where adequate safeguards were already in place).
Risk of Erroneous Deprivation: The second Eldridge factor considers the risk of erroneous deprivation and the likely value of additional procedural safeguards. Eldridge, 424 U.S. at 335, 96 S.Ct. 893. Moore and Wilson do not claim that they were erroneously deprived of their licenses as the result of any court or DOL mistake; they do not challenge the factual basis for their suspensions. Majority at 5. Instead, they argue that errors occur routinely in court records, DOL records, and the transfer of information between the courts and DOL, which in turn lead to erroneous deprivation of driver's licenses.
Other courts have considered the risk of error in license suspension cases. In Dixon v. Love, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the United States Supreme Court considered a statutory and regulatory scheme for license suspensions in Illinois that is similar to the system at hand.[4] Under the Illinois system, a driver's license had to be suspended if the licensee accumulated a certain number of points for traffic offenses within a particular time period. Id. at 109, 97 S.Ct. 1723. The Court found a low risk of error because the suspensions, which were mandatory for drivers with repeated traffic offense convictions, were "largely automatic." Id. at 113, 97 S.Ct. 1723. Although the Court recognized that clerical errors might occur, it concluded that an administrative hearing was not the appropriate remedy because a written objection by the license holder would suffice to bring the mistake to the secretary of state's attention. Id.
Similarly, in Stauffer v. Weedlun, 188 Neb. 105, 195 N.W.2d 218, appeal dismissed, 409 U.S. 972, 93 S.Ct. 307, 34 L.Ed.2d 236 (1972), the Nebraska Supreme Court reviewed a revocation procedure based on the accumulation of points for traffic violations. The court held that due process did not require notice and a hearing before the revocation because the essential facts had already been determined in the judicial proceedings for the traffic offense. Id. at 223. Thus, the court concluded: "In a very real sense the Director acts only ministerially. The resultthe revocationflows from the operation of the statute upon the already judicially determined facts, that is, the series of convictions of traffic offenses." Id. Recognizing that some errors might occur, the court nonetheless concluded that the risk was not high because the system contained "no latitude for discretion nor does it require any factual determinations in the judicial, quasi-judicial, or administrative law sense." Id.
With regard to potential DOL error in this case, Moore and Wilson present no evidence that speaks to the risk of ministerial error by DOL in processing information sent by the court. Of course, there is always some risk of DOL error; but because suspension pursuant to RCW 46.20.289 is largely a ministerial act, courts have recognized that the risk of such error is small. Dixon, 431 U.S. at 113, 97 S.Ct. 1723; Stauffer, 195 N.W.2d at 223. If DOL errors were to occur, they could be corrected by contacting DOL. In fact, the United States Supreme Court has discounted the risk of deprivation because of clerical error where the administrative agency can be notified of the error in writing. Dixon, 431 U.S. at 113, 97 S.Ct. 1723. Moreover, Moore and Wilson give no examples of DOL error that have not been corrected within the 30-day grace period. Thus, the minimal risk of erroneous deprivation of a license because of DOL error simply does not support a conclusion that RCW 46.20.289 is unconstitutional beyond a reasonable doubt.
With regard to court error, Moore and Wilson present anecdotal evidence regarding only two drivers, Barrionuevo and Seals, whose licenses were allegedly suspended because of court error. First, Mr. Barrionuevo's license was suspended for several months because of an error in the information *886 sent from the court to DOL. Second, Mr. Seals' license was suspended because a driver had given Seals' name, instead of his own, upon a traffic stop. Mr. Seals' notification letter from DOL was issued on January 13, 2000, explaining that license suspension would take effect on February 12. He called the court on January 14 to explain that his brother had used his name when pulled over for speeding. Seals filed a letter requesting an identification hearing on January 21. The judge consulted with the deputy prosecuting attorney and then set the hearing for February 22. Because the arresting officer had scheduled a vacation, the hearing was continued until March 17. At the hearing, the officer testified that Mr. Seals was not the correct defendant, and DOL was notified by e-mail on March 20, 36 days after suspension took effect. Thus Seals' 36-day erroneous suspension was a result of an error on the face of the court's judgment.
Neither the parties nor the majority explains how DOL could correct court error, a point I return to later in this opinion. Yet, even if we assume for the sake of argument that DOL could somehow ignore the court's judgment and stay suspension of a driver's license where DOL believed the court had made a mistake, the Barrionuevo and Seals cases leave us with very little evidence in the record that speaks to the true risk of erroneous deprivation based on court error. While these erroneous suspensions are regrettable, we have no way of knowing how widespread such errors really are, an analysis compelled by Eldridge. In addition, Moore and Wilson present no evidence as to how frequently municipal courts fail to rectify such errors before the 30-day grace period has elapsed. See IRLJ 6.7; CrRLJ 7.8(b)(1); CrRLJ 7.8(a). The United States Supreme Court has held that due process does not require that the State provide a perfect, error-free process, Mackey, 443 U.S. at 13, 99 S.Ct. 2612, so the mere existence of some error is not enough. See also Eldridge, 424 U.S. at 344, 96 S.Ct. 893 (due process requirements are determined by the overall risk of error in the proceeding at issue, not by the rare exceptions that occur). Given the exacting "beyond a reasonable doubt standard" for finding a statute facially unconstitutional, the anecdotal evidence here is particularly thin. Mere possibility of error is not enough. Mackey, 443 U.S. at 13, 99 S.Ct. 2612.
Probable Value of Providing a DOL Hearing: In a case like Moore's or Wilson's, where the court has entered a valid judgment on the failure to appear, pay, or comply, and no clerical error has occurred, a DOL presuspension administrative hearing would provide no benefit at all. Further, when we consider the value of a DOL hearing in cases where suspension is pending as the result of a DOL error in processing information received from the courts, the type of error that could legitimately be resolved by a DOL administrative hearing, Moore and Wilson present no evidence to suggest that the opportunity for such a hearing would actually benefit drivers. Currently, if the driver receives notice of impending suspension because of DOL error, the licensee can contact DOL by calling the number provided in the notification letter, and presumably the error could easily be confirmed by comparison with the municipal court's judgment. Moore and Wilson have presented no examples of any failure to rectify DOL error before expiration of the 30-day grace period. See Dixon, 431 U.S. at 113, 97 S.Ct. 1723 (noting that a written objection by the license holder would suffice to bring mistake to the secretary's attention). Therefore, Moore and Wilson fail to show any added value in requiring DOL to conduct presuspension hearings. Given the high standard for finding a statute to be facially unconstitutional, how can we conclude that an opportunity for DOL hearing to correct its own error would truly benefit drivers, i.e., that such a process is "due?"
Moore and Wilson rely on Warner v. Trombetta, 348 F.Supp. 1068 (M.D.Pa.1972), aff'd, 410 U.S. 919, 93 S.Ct. 1392, 35 L.Ed.2d 583 (1973), to support their argument that a full administrative hearing is required even if the suspension is mandatory and the only possible errors are ministerial. In Warner, the district court held that a mandatory suspension of a driver's license for one year upon conviction of leaving the scene of an accident violated due process if no administrative hearing was provided. Id. at 1071. *887 But Warner is distinguishable from the case at bar as the statute involved in it provided for the immediate suspension of the license, thus providing the license holder with no opportunity to resolve his or her case prior to suspension. Id. at 1070 n. 2. In contrast, RCW 46.20.289 provides a 30-day grace period. In addition, the statute in Warner provided that the suspension would be for one year. Id. Under RCW 46.20.289, the length of the suspension is not fixed, ending when the license holder resolves the situation. Finally, Warner was decided before the United States Supreme Court adopted the balancing test set forth in Eldridge. Although Warner has not been overruled, it was decided without the benefit of the balancing test analysis that is now used in procedural due process cases.
In the case of potential court error, the majority fails to explain how a DOL hearing would have aided drivers like Seals or Barrionuevo. Neither the majority nor the parties have explained how, in light of the separation of powers doctrine, DOL could have the power to overturn or even ignore a court judgment. See, e.g., Carrick v. Locke, 125 Wash.2d 129, 135, 882 P.2d 173 (1994) (one branch of government may not invade the prerogatives of another). Any assumption that DOL could somehow do more than correct its own error remains unsupported.
In Seals' case, if there had been a DOL hearing and DOL had determined that Seals was not the one cited, it is unclear how DOL could have used this information to rectify the situation. Likewise, even if DOL had conducted a hearing, it still would have been powerless to change the nature of Barrionuevo's conviction without receiving verification from the court. DOL is not authorized to modify information received from a court of law. RCW 46.20.289 (allowing DOL to lift a suspension only after certification from the court). A DOL hearing would have been of no benefit to either Seals or Barrionuevo.
In sum, the second Eldridge factor weighs against a finding of facial unconstitutionality. The risk of erroneous deprivation resulting from the alleged due process violation in this case, namely the denial of a presuspension DOL hearing, is, on this record, slight. In fact, Moore and Wilson present no statistical or anecdotal evidence of ministerial errors that could be remedied by a DOL hearing. Furthermore, the added protection that would result from an opportunity for a DOL hearing is equally slight given that such a hearing could remedy only DOL mistakes. The minimal risk of erroneous deprivation in the absence of a DOL hearing and the equally limited value that a DOL hearing would provide simply do not support a conclusion that we should hold RCW 46.20.289 unconstitutional beyond a reasonable doubt.
Burden of Additional Procedure: The third Eldridge factor considers the government's interest, including the fiscal and administrative burden of providing additional procedural safeguards. 424 U.S. at 335, 96 S.Ct. 893. The State has an interest in the efficient and cost-effective administration of its driver's license system, including suspensions. The State also has an interest in ensuring that offending drivers appear in court, pay any applicable fines, and comply with the terms of court orders.
In its amicus brief, DOL asserts that it will incur significant fiscal and administrative burdens if it is required to offer hearings to all drivers who receive suspension notices pursuant to RCW 46.20.289. For example, in 2001, DOL issued 391,265 notices of suspension pursuant to RCW 46.20.289. Being required to offer hearings would mean that DOL would have to notify all of these drivers of their right to a hearing. Of those who received suspension notices, DOL suspended 268,331 licenses in 2001. If as few as five percent of those suspended in 2001 requested hearings, DOL would be responsible for conducting over 13,000 hearings. However, Moore and Wilson present no evidence as to how many of those hearings would actually prevent the erroneous deprivation of a driver's license, especially given the limited power of DOL to alter court judgments.
This court should find a statute facially unconstitutional only where it can do so beyond a reasonable doubt. Citizens, 149 Wash.2d at 631, 71 P.3d 644. At best, Moore and Wilson have shown that two driver's licenses have been erroneously suspended under the current system. Yet, due process *888 does not require an error-free system. Furthermore, Moore and Wilson have presented no evidence of the extent of ministerial error that could be rectified by the hearing that they request. Although the burden on the State is not controlling, it must be weighed against the value of providing additional safeguards and the risk of erroneous deprivation as discussed above. Here, the burden of providing hearings to all license holders who request them outweighs the slight risk of error and the limited value of providing DOL hearings to correct potential ministerial errors, even considering the strong individual interest in an uninterrupted driver's license. The statutory scheme at issue here allows for a 30-day grace period in which drivers can resolve DOL ministerial errors through informal procedures. I would hold that such a scheme satisfies the requirements of due process.
OWENS, FAIRHURST and IRELAND, JJ., concur.
NOTES
[1] Moore and Wilson do, however, contest the factual basis for two prior suspension orders they received from DOL. Moore argues DOL had no statutory authority to issue a May 11, 1994 order suspending his license for failure to pay a fine because RCW 46.20.289 does not authorize DOL to suspend a license for failure to pay a criminal fine. Wilson argues DOL exceeded its authority when it issued its November 3, 1998, order of suspension because the suspension was issued due to his failure to appear at a scheduled pretrial hearing, and prior to 1999 DOL did not have the authority to suspend licenses for failing to appear at a scheduled court hearing. Neither of these suspension orders is currently before this court, as we are concerned only with the November 17, 1999, and December 23, 1999, orders deemed invalid by the district court.
[2] The exhibits may not be considered as evidence of actual events because they relate to experiences of persons who are not before the court. ER 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). But they may be considered as illustrative examples of the difficulties a person may encounter under the current statutory scheme, provided they are both material to the ultimate fact to be proved and shown to be substantially alike to the thing in issue. State v. Gray, 64 Wash.2d 979, 983, 395 P.2d 490 (1964). Both factors are met here: they are relevant to the issue of unreasonable risk of error and similarly related to mandatory suspensions of driver's licenses under RCW 46.20.289. The City of Redmond does not appeal the trial court's order denying its objection to the exhibits and discusses the exhibits at length.
[3] The dissent discounts the importance of these two illustrative examples, noting that because the mistakes were due to court rather than DOL errors, under the current statutory scheme an administrative hearing alone would not have provided either driver relief. Dissent at 887. The dissent's argument, however, misses the mark as the issue before this court is not whether DOL could have cured ministerial errors of its own accord but whether the statute provides due process of law.
[4] The dissent's contrary conclusion relies primarily on Dixon, 431 U.S. at 113, 97 S.Ct. 1723. Dissent at 885, 886. Dixon upheld the provision of the Illinois driver licensing law which empowers the secretary of state to suspend or revoke, without a preliminary hearing, a license of a driver who had repeatedly been convicted of traffic offenses. Dixon, 431 U.S. at 115, 97 S.Ct. 1723. But Dixon is unhelpful here as the statute at issue in that case allowed a licensee to request a full evidentiary hearing at a date as early as practical. Id. at 109-10, 97 S.Ct. 1723.
[1] The result might be different if an as applied challenge were brought by drivers whose licenses had actually been suspended as the result of DOL error and who were able to present enough evidence of widespread error to tip the Eldridge scale.
[2] The majority concludes that Moore and Wilson have launched facial rather than as applied challenges to RCW 46.20.289, stating that "[t]he essence of their argument is that RCW 46.20.289 violates due process because it fails to afford any driver facing a suspension of his or her license under that statute an opportunity for an administrative hearing with DOL prior to or after such suspension." Majority at 878-879. I cannot agree with this conveniently broad characterization of Moore and Wilson's argument. The trial court did not hold that RCW 46.20.289 was unconstitutional on its face. Moore and Wilson's brief offers no clear indication that they have ever argued a facial challenge to the statute; in fact, their analysis consistently discusses the statute's application to their own cases. Br. of Resp't at 16, 19, 21, 25 ("There was no opportunity provided to the Respondents by DOL for even a limited hearing prior to or subsequent to suspending his driving privileges."). When questioned at oral argument, Moore and Wilson's attorney initially responded that the statute was constitutional, becoming less certain only after being pressed by the court. Therefore, I would conclude that Moore and Wilson have challenged RCW 46.20.289 only as it was applied to them; despite the less strenuous burden applied to such challenges, applying the Eldridge balancing test to the facts of Moore's and Wilson's cases would render RCW 46.20.289 constitutional as applied to them.
[3] Both the Infraction Rules for Courts of Limited Jurisdiction and the Criminal Rules for Courts of Limited Jurisdiction provide for the filing of a motion for relief from judgment, which can be granted on the basis of court error. IRLJ 6.7; CrRLJ 7.8(b)(1). There are also provisions for correction of simple clerical mistakes. CrRLJ 7.8(a).
[4] The regulations in Dixon differ from the case at bar, in that they provided for postsuspension hearings and permitted drivers to obtain restricted permits for commercial use or in case of hardship. 431 U.S. at 109-10, 97 S.Ct. 1723. Here, although the statutory scheme does not mandate that DOL must provide a postsuspension hearing, it does provide the 30-day period between notice to the license holder and suspension during which any errors may be corrected.