117 P.3d 1126 (2005)
CITY OF REDMOND, Petitioner,
v.
Clussie BAGBY, Jr., Robert J. Brim, Tony L. Clenney, William R. Duerr, James W. Hawkins, Joseph R. LaCasse, Phillip McGahey, Dave J. Miller, Sean Scarbrough, Mark Thompson, and oswald trent, respondents.
No. 73249-3.
Supreme Court of Washington, En Banc.
Argued March 17, 2005.
Decided August 11, 2005.
*1127 Jill Ann Klinge, City of Redmond Prosecutor, Richard Lawrence Mitchell, Attorney at Law, Redmond, WA, for Petitioner.
Cherilyn Gayle Church, Attorney at Law, Kenmore, WA, Donna Kay Tucker, Tucker & Stein PS Inc., Bellevue, WA, for Respondents.
Daniel Brian Heid, Auburn, WA, Amicus Curiae on behalf of Washington State Association of Municipal Attorneys.
Masako Kanazawa, Attorney at Law, Seattle, WA, Amicus Curiae on behalf of Department of Licensing.
C. JOHNSON, J.
¶ 1 This case involves a challenge to the mandatory driver's license suspension/revocation procedures upon conviction of certain criminal traffic offenses. The statutes at issue include those that require a mandatory license suspension/revocation upon criminal conviction, with no opportunity for either a presuspension or postsuspension hearing by the Department of Licensing (Department).
¶ 2 A conviction under these statutes[1] requires the Department to revoke the person's license for varying lengths of time. As to the individual respondents[2] in this case, the convictions that apparently triggered their mandatory suspensions include reckless driving, under RCW 46.61.500; driving while license invalidated, under RCW 46.20.342; vehicular homicide, under RCW 46.61.520; and minor in possession of alcohol, under RCW 66.44.270(2). Clerk's Papers (CP) at 1-199. The respondents in these consolidated cases were all charged by the City of Redmond with driving while license suspended, in either the first or second degree. *1128 They moved to dismiss the charges, challenging their original suspensions on the basis that they were unconstitutionally denied a presuspension or postsuspension hearing by the Department.
¶ 3 The King County District Court judge granted the motion, holding that the respondents' due process rights were violated. The City of Redmond appealed, and the King County Superior Court affirmed. We granted direct review and reverse.

DISCUSSION
¶ 4 Procedural due process requirements exist for persons who have property interests, including a driver's license. Dixon v. Love, 431 U.S. 105, 112, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). We recently analyzed a similar argument in City of Redmond v. Moore, 151 Wash.2d 664, 91 P.3d 875 (2004). In Moore, we held that those who failed to resolve minor traffic tickets, thereby causing an automatic license suspension, cannot have their license suspended by the Department without first having an opportunity for a hearing on the matter. Moore, 151 Wash.2d at 677, 91 P.3d 875. The respondents in this case argue that these due process requirements should apply to cases where criminal convictions result in mandatory license suspensions.
¶ 5 While the City of Redmond acknowledges that a person has a right to due process prior to the suspension of his or her driver's license, they argue that sufficient due process has been afforded the respondents under the statutes at issue here. Both parties agree that the Mathews three-part balancing test should be used. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The United States Supreme Court determined that under the Fourteenth Amendment,[3] the Mathews test is applied to determine when sufficient due process has been afforded. This test addresses, first, the private interest affected by the government action; second, the risk of erroneous deprivation of that private interest, including additional procedural safeguards in place; and third, the governmental interest, including the function involved and the fiscal and administrative burdens that alternative procedural requirements would entail. Moore, 151 Wash.2d at 670, 91 P.3d 875 (citing Mathews, 424 U.S. at 335, 96 S.Ct. 893).
¶ 6 First, in Moore we concluded that the defendants' personal interest in their license was substantial, since a license could impact their ability to make a living. Moore, 151 Wash.2d at 670-71, 91 P.3d 875. The case at hand is no different. A driver's license is a substantial private interest.
¶ 7 Second, we held that since the defendants in Moore had no access to a hearing prior to notice of revocation by the Department, there was increased potential for prolonged erroneous deprivation of this private interest. We found that there was a risk of error when a license is revoked with no opportunity for an administrative hearing. Moore, 151 Wash.2d at 675-76, 91 P.3d 875.
¶ 8 Here, conversely, there is minimal risk that a criminal defendant will be erroneously deprived of their driver's license. No errors exist in the records of the respondents in this case. For example, it is unlikely that a defendant, like the respondents in this case who were originally convicted of driving under the influence of alcohol, would have their license incorrectly suspended by a judge who is imposing a sentence upon conviction. As such, the likelihood of erroneous deprivation does not exist in this case, since a criminal proceeding which results in a conviction provides sufficient due process protections.
¶ 9 Also, we note that in these cases, RCW 46.20.270 provides additional safeguards that did not exist in Moore. In Moore, the defendants never appeared before a judge; they simply had their license suspended by the Department after not resolving traffic infractions. Moore, 151 Wash.2d at 669, 91 P.3d 875. RCW 46.20.270 requires that anyone convicted of certain offenses must have his or *1129 her license forfeited to the court at the time of conviction
RCW 46.20.270(1) states:
Whenever any person is convicted of any offense for which this title makes mandatory the suspension or revocation of the driver's license of such person by the department, the privilege of the person to operate a vehicle is suspended until the department takes the action required by this chapter, and the court in which such conviction is had shall forthwith secure the immediate forfeiture of the driver's license of such convicted person and immediately forward such driver's license to the department, and on failure of such convicted person to deliver such driver's license the judge shall cause such person to be confined for the period of such suspension or revocation or until such driver's license is delivered to such judge. . . .
(Emphasis added).
¶ 10 Defendants are required to personally appear in criminal proceedings. They are afforded all constitutional protections in those proceedings, including the right to appeal. Under RCW 46.20.285, the license suspension is stayed until the conviction becomes final. Perhaps, most importantly, under both RCW 46.20.265 and RCW 46.20.270, the suspension or revocation occurs as a result of the defendant's conviction, where every defendant personally appears for imposition of sentence. For driving violations that mandate a license suspension, RCW 46.20.270 requires the judge to physically take the defendant's license. For other juvenile convictions that mandate a license suspension under RCW 46.20.265, RCW 66.44.365(1), requires the judge to notify the Department within 24 hours of the suspension. Despite the submission that isolated administrative errors may have occurred in some situations, the risk of possible erroneous deprivation after the suspension is entered by the court and then administered by the Department is insignificant.
¶ 11 Third, we held that the government interest of public safety was limited in Moore. That is, the interest in the simple administration of justice by having people resolve minor ticket infractions "[d]oes not rise to the level of the State's compelling interest in keeping unsafe drivers off the roadways." Moore, 151 Wash.2d at 677, 91 P.3d 875 (emphasis added). In this case, under this third Mathews factor, the government's interest is higher than existed in Moore.
¶ 12 In Moore, we implicitly recognized that governmental interest is significantly higher in cases involving criminal offenses. Moore, 151 Wash.2d at 677, 91 P.3d 875. The legislature has determined that those who commit criminal driving violations are a threat to public safety, since suspended drivers are "more likely to be involved in causing traffic accidents, including fatal accidents, than properly licensed drivers, and pose a serious threat to the lives and property of Washington residents." Laws of 1998, ch. 203, § 1. In fact, due to this apparent danger, the legislature has directed the courts to secure the immediate forfeiture of the driver's license of such a convicted person. RCW 46.20.270(1). We were careful in Moore to distinguish between drivers who had their license suspended in an effort to effectuate the resolution of traffic tickets and those who are "habitually unsafe." Moore, 151 Wash.2d at 677, 91 P.3d 875.
¶ 13 Some of the respondents in the case before us have been convicted of reckless driving, vehicular homicide, eluding police, and multiple DUIs (driving under the influence). CP at 102-179. Though the severity of crimes[4] that trigger a mandatory suspension vary, a significantly greater government interest exists in keeping those convicted of crimes off the road, rather than those who have failed to resolve traffic infractions. Thus, a heightened government interest exists in cases where a driver's license is suspended based on a criminal conviction.

CONCLUSION
¶ 14 Sufficient due process requirements exist for those who have their driver's license suspended based on a criminal conviction. The statutes that require a mandatory suspension *1130 based on a conviction provide a heightened government interest in highway safety and a decreased likelihood of erroneous depravation. Accordingly, we find the statutes constitutional as applied to the respondents. We reverse and remand to the district court for further proceedings.
ALEXANDER, C.J., MADSEN, BRIDGE, OWENS, FAIRHURST AND J.M. JOHNSON, JJ., concur.
SANDERS, J. (dissenting).
¶ 15 The majority upholds statutes[1] mandating suspension or revocation of a driver's license upon criminal conviction absent the right to any hearing. I dissent because due process requires a hearing be made available to diminish clerical error and inaccuracy.
¶ 16 Property interests, including driver's licenses, are protected from deprivation by due process. Dixon v. Love, 431 U.S. 105, 112, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). The test set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), governs whether the process the government provides is sufficient. The test references three factors: (1) the private interest involved, (2) the risk of error and the efficacy of additional procedural safeguards, and (3) the government's interest in the added administrative burden and cost. Id. at 335, 96 S.Ct. 893.
¶ 17 We applied this standard to a similar statute in City of Redmond v. Moore, 151 Wash.2d 664, 91 P.3d 875 (2004). The statute (RCW 46.20.289) in Moore required suspension for drivers who failed to respond to a notice of a traffic infraction. A corollary statute (RCW 46.20.324(1)) denied the driver the possibility of a hearing to correct any errors. Applying the Mathews test, we found the statutes violated due process "because they do not provide adequate procedural safeguards to ensure against the erroneous deprivation of a driver's interest in the continued use and possession of his or her driver's license." Moore, 151 Wash.2d at 677, 91 P.3d 875. The same reasoning applies here.
¶ 18 The majority admits a driver's license is a significant property interest. Majority at 1128. Indeed, as we noted in Moore, "[d]epriving a person of the use of his or her vehicle can significantly impact that person's ability to earn a living." Moore, 151 Wash.2d at 670, 91 P.3d 875 (citing Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)); see also Dixon, 431 U.S. at 113, 97 S.Ct. 1723 ("[A] licensee is not made entirely whole if his suspension or revocation is later vacated."). The importance of a driver's license to an individual's well-being cannot be overstated in today's mobile society. Few people live proximately to their place of business or to other essential venues, rendering them dependent on private transportation.
¶ 19 The second factor is the risk of erroneous deprivation and the value of additional safeguards. Mathews, 424 U.S. at 335, 96 S.Ct. 893. The risk here is substantial. The majority distinguishes Moore by emphasizing that conviction and sentencing procedures adequately protect against errors. Majority at 1128-1129. While the defendant may be required to surrender his license to the court, notice must still be sent to the Department of Licensing (DOL). See RCW 46.20.285, .291, .265(1). It is here that errors may occur. Judge David S. Admire convincingly reasoned errors would occur:
The court is going to indicate that what I have to continue to look at is in this court in Northeast Division we had 35,000 cases filed, over 35,000 another over 35,000 this year. The numbers alone with the staff that we have, there are going to be mistakes found. There are going to be mistakes in how it was transmitted to DOL. There's going to be mistakes due to the sheer number of cases transmitted to DOL that DOL's going to make mistakes in inputting.... The potential harm that can come to an individual without giving him the opportunity to say look it [sic] 1) you have the wrong person, 2) I wasn't convicted *1131 of that, 3) you're suspending me for the wrong amount of time, whatever, the potential is there to those individuals that can be disastrous.
Verbatim Report of Proceedings (Nov. 5, 2001) at 31-32. Mistakes in the notice sent to DOL could result in a person's driver's license being wrongfully suspended, or DOL could make its own mistakes. Nevertheless, that person has no opportunity to challenge the suspension in a hearing. The risk of erroneous deprivation of this important property interest is significant.[2]
¶ 20 In Moore we relied on Warner v. Trombetta, 348 F.Supp. 1068 (M.D.Pa.1972), aff'd, 410 U.S. 919, 93 S.Ct. 1392, 35 L.Ed.2d 583 (1973), and again it is precisely on point. See Moore, 151 Wash.2d at 671-73, 91 P.3d 875. The case merits a lengthy quote:
"[E]ven if the convictions cannot be contested, there still remain the possibilities, among others, that the convictions were those of another person with the same name; that the fines and costs were paid on an information at variance with that for which the minor judiciary entered a conviction as plaintiff contends occurred in this case; ... or that there were errors on the report of conviction form. In none of these instances is there a provision for a hearing before suspension even though notice of the assessment of points is given. Notice without opportunity to rectify error obviously is not sufficient."
348 F.Supp. at 1071 (quoting Reese v. Kassab, 334 F.Supp. 744, 747 (W.D.Pa.1971)). As we approvingly quoted in Moore, the Warner court then concluded:
The fatal defect in the statute at bar is that there is no provision made for any type of administrative hearing with notice and an opportunity to be heard before the revocation action becomes effective. Hence, the possibility exists that error in a conviction record could result in the revocation of the license of an innocent motorist. Under these circumstances, we conclude that the essentials of due process require the opportunity for some sort of meaningful administrative hearing prior to the revocation of an operator's license.
Id. The majority's protestation that administrative errors will be "isolated" and the risk or error "insignificant," majority at 1129, places greater faith in clerical or administrative accuracy than is justified. The risk of erroneous deprivation is substantial.
¶ 21 An available hearing would diminish the potential for error. DOL could confirm it is revoking or suspending the license of the correct person, and any errors in identity or reporting could be brought to light. Thus, additional safeguards are highly efficacious and are reasonable means to protect the individual's substantial interest in his driver's license.
¶ 22 Finally, we consider the government's interests. Mathews, 424 U.S. at 335, 96 S.Ct. 893. The majority considers the government's interest to be keeping unsafe motorists off the road. Majority at 1129. That is an admittedly important interest but not an interest cognizable under Mathews, which relates to the additional burden further procedure would impose on the government. The State's interest in public safety does not influence whether a hearing should be provided to minimize administrative errors in the revocation process. Rather, as relevant here, the State's interest is avoiding the additional cost of providing the opportunity for a hearing. See Moore, 151 Wash.2d at 676, 91 P.3d 875 ("[T]he third Mathews factor requires consideration of the State's interest in the fiscal and administrative burden that additional or substitute procedural requirements would entail.").
¶ 23 The State can revoke the license of a dangerous driver; it merely needs to provide the potential for a hearing to minimize clerical and administrative errors. The cost of such a hearing is minimal compared to the disastrous consequences to a person whose driver's license is erroneously deprived. Due process requires a hearing to diminish the prospect of error.
*1132 ¶ 24 I would affirm the trial court, and therefore dissent.
CHAMBERS, J., concurs.
NOTES
[1] Though dealing with specific statutes here, the broader challenge would include any statute that contains a requirement that the Department revoke a driver's license for a certain period of time after the conviction, which includes the following offenses: failure to stop [RCW 46.20.285(5)]; felonies committed by using an automobile (RCW 46.20.285(4)); perjury to the Department related to car ownership or operation (RCW 46.20.285(6)); vehicular assault (RCW 46.20.285(2)); vehicular homicide (RCW 46.20.285(1)); racing or reckless driving (RCW 46.20.285(7)); driving while license suspended (RCW 46.20.342(1)); eluding police (RCW 46.61.024(3)); driving while under the influence (RCW 46.20.285(3)); implied consent test refusal (RCW 40.20.308(2)); reckless endangerment of roadway workers (RCW 46.61.527(5)); unattended child in a running vehicle (RCW 46.61.685(2)); minor in possession of alcohol; drugs; or a firearm (RCW 46.20.265(1)); or theft of motor fuel (RCW 46.61.740(2)).
[2] Clussie Bagby, Jr., Robert J. Brim, Tony L. Clenney, William R. Duerr, James W. Hawkins, Joseph R. Lacasee, Phillip McGahey, Dave J. Miller, Sean Scarbrough, Mark Thompson, and Oswald Trent (respondents).
[3] "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1.
[4] See supra note 1.
[1] The statutes at issue in this case are: RCW 46.61.500 (reckless driving); RCW 46.20.342 (driving with invalidated license); RCW 46.61.520 (vehicular homicide); RCW 66.44.270(2) (minor in possession of alcohol). RCW 46.20.270 prescribes the procedure to be followed when revoking the licenses because of a criminal conviction.
[2] Especially since the license is not restored until DOL takes the appropriate action under chapter 46.20 RCW.