IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| LIBBY HAINES-MARCHEL and ROCK ISLAND CHRONICS, LLC, Dba CHRONICS, | ) ) ) ) | No. 75669-9-I |
| Appellants, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| WASHINGTON STATE LIQUOR & CANNABIS BOARD, an Agency of the State of Washington, | ) ) ) ) ) | |
| Respondent. | ) | FILED: December 18, 2017 |

SCHINDLER, J. — In 2012, Washington voters approved Initiative Measure 502. LAWS OF 2013, ch. 3, codified as part of chapter 69.50 RCW. Initiative 502 legalizes the possession and sale of marijuana and creates a system for the distribution and sale of recreational marijuana. Under RCW 69.50.325(3)(a), a retail marijuana license shall be issued only in the name of the applicant. No retail marijuana license shall be issued to a limited liability corporation unless all members are qualified to obtain a license. RCW 69.50.331(1)(b)(iii). The true party of interest of a limited liability company is "[a]ll members and their spouses."[1] Under RCW 69.50.331(1)(a), the Washington State

---

[1] WAC 314-55-035(1).

Liquor and Cannabis Board (WSLCB) considers prior criminal conduct of the applicant.[2] Criminal history of eight or more points is grounds for denial of a retail marijuana license application.[3] The WSLCB denied the application of Rock Island Chronics LLC (Chronics LLC) for a retail marijuana license based on the criminal history of the spouse of the sole member of the limited liability company, Libby Haines-Marchel. Chronics LLC and Haines-Marchel appeal the WSLCB decision to deny the application for a retail marijuana license. We affirm.

Application for a Retail Marijuana License

The material facts are not in dispute. In 2013, Rock Island Chronics LLC (Chronics LLC) submitted an application to the Washington State Liquor and Cannabis Board (WSLCB) for a retail marijuana license in Douglas County. The application identifies Libby Haines-Marchel as the sole member and manager of Chronics LLC with a "100%" ownership interest. The application identifies Brock Marchel as her spouse.

The WSLCB determines the maximum number of retail marijuana locations for each county. WAC 314-55-081(1). If the number of applications exceeds the allotted number, the WSLCB conducts a lottery. Former WAC 314-55-081(1) (2013).

RCW 69.50.331(1) states the WSLCB shall conduct an evaluation of the application. The WSLCB may consider the criminal history of the applicant and has the discretion to grant or deny the application for a marijuana license. RCW 69.50.331(1)(a). If the application "is disqualified for any reason," the WSLCB will issue a notice of intent to deny and "the next application on the lottery list will take its place."

---

[2] We note the legislature amended chapter 69.50 RCW and chapter 314-55 WAC after 2013. Unless otherwise noted, because the language pertinent to our analysis has not changed, we cite the current statutes and regulations throughout the opinion.

[3] WAC 314-55-040(1).

2

On May 1, 2014, the WSLCB notified Chronics LLC that following the lottery for Douglas County, its application was "selected number 1."[4] The letter states, in pertinent part:

> **Your application was selected number 1.**
>
> We will begin processing applications for the allotted number of stores in the coming weeks. If an application is disqualified for any reason or withdrawn by the applicant, the next application on the lottery list will take its place. If an application appears to not qualify, a statement of Intent to Deny will be issued with the right to appeal that decision. Once all licenses have been issued in a jurisdiction the remaining applications will be administratively closed.
>
> Applicants selected in the lottery to move forward in the licensing process are not guaranteed to receive a license. The application must undergo our rigorous investigation process and pass a final inspection prior to issuance.[5]

Under RCW 69.50.331(1)(b)(iii), "[n]o license of any kind may be issued to" a corporation "unless all of the members thereof are qualified to obtain a license." WAC 314-55-035 identifies "What persons or entities have to qualify for a marijuana license."[6] WAC 314-55-035(1) defines the true parties of interest for a limited liability company as "[a]ll members and their spouses" and "[a]ll managers and their spouses." Because the "marijuana license must be issued in the name(s) of the true party(ies) of interest," Chronics LLC had to submit a "Personal/Criminal History Form" for each member and spouse of the limited liability company. WAC 314-55-020(6)(a), -035(1).

On December 2, 2014, WSLCB License Investigator Tim Lynch met with Haines-Marchel. For the first time, Haines-Marchel "disclosed that her spouse, Brock Marchel,

---

[4] Boldface omitted.

[5] Boldface in original.

[6] Boldface omitted.

is currently incarcerated." Haines-Marchel told Lynch that she "was hoping the power of attorney she holds will allow her to complete the documents for him."

WAC 314-55-040 addresses consideration of criminal history for a retail marijuana license. WAC 314-55-040(1) uses a "point system" to determine if criminal history prevents issuance of a retail marijuana license. Under WAC 314-55-040(1), a felony conviction is 12 points. Felony convictions remain in effect for 10 years. WAC 314-55-040(1). The WSLCB will not issue a retail marijuana license if an applicant has "accumulated eight or more points." WAC 314-55-040(1).

Lynch asked Haines-Marchel to provide "more information on the incarceration (the circumstances behind the incarceration and when Brock may be released)." On December 11, Lynch sent an e-mail to Haines-Marchel "regarding the requirement for her husband to complete his own documents"—the Personal/Criminal History Form. In response, Haines-Marchel stated her spouse is incarcerated "for a homicide" and "is serving a 44 ½ year" sentence.[7] On December 15, Haines-Marchel sent an e-mail to Lynch and attached a copy of a "Spousal Renunciation of Rights Affidavit" dated July 3, 2014. The December 15 e-mail states, in pertinent part:

> My husband is currently incarcerated for a homicide charge and is serving a 44-1/2 year sentence with an ERD (earliest possible release date) of 2038. The board knows of my situation however I want to make you of [sic] aware that my husband has relinquished all community rights to property pursuant to RCW 26.16.050 which states "a spouse m[a]y give grant sell or convey directly to the other his or her community right title interest and all or any portion of their community real property[.]" [M]y husband has no community property interest in this business and is not a true party of interest. I have attached my husband's Spousal Renunciation of Rights Affidavit.

The Spousal Renunciation of Rights Affidavit states Brock "will relinquish, irrevocably

---

[7] The record does not indicate when the felony conviction occurred.

4

deny and renounce any and 'all' ownership interest and management decisions in Rock Island Chronics."

On December 15, Lynch forwarded his report to the WSLCB Marijuana Licensing and Regulation Division (Licensing Division). The comment portion of the report states:

> The applicant is currently married to Brock Marchel who according to the applicant is serving time in prison for a homicide conviction. The conviction is a felony that holds a 44½ year term. Although the spouse would like to give all rights to the business over to his wife [WAC] 314-55-035 requires that all true parties of interest have to qualify for a licenses [sic].
>
> [WAC] 314-55-040 — what criminal history might prevent a marijuana license applicant from receiving or keeping a marijuana license.
>
> "Felony conviction["] - 12 points. Because the applicant did not complete a criminal history form it is unclear what other conviction or charges he may have.

Denial of Retail Marijuana License

On January 12, 2015, the Licensing Division sent Chronics LLC a "Statement of Intent to Deny Marijuana License." The "Summary of Relevant Facts" states, in pertinent part:

> 2.2 [Haines-Marchel]'s spouse, Brock Marchel, is currently incarcerated, serving a 44.5 year term for a homicide conviction. Although the spouse would like to give all rights to the business over to his wife, they remain married in the state of Washington. WAC 314-55-035 requires that all true parties of interest must qualify for a license.

The "Relevant Authority and Conclusions" cite RCW 69.50.331(1) and WAC 314-55-035 and -040(1) as "grounds for denial."

> 3.1 The conduct outlined in paragraph 2.2 constitutes grounds for denial of the marijuana license application under the provisions of RCW 69.50.331(1) for the purpose of reviewing any application for a license and for considering the denial, suspension, revocation or

5

renewal or denial thereof, of any license, the state liquor control board may consider any prior criminal conduct of the applicant.

3.2 The conduct outlined in paragraph 2.2 also constitutes grounds for denial under the provisions of WAC 314-55-035 and WAC 314-55-040(1).

3.3 Paragraphs 3.1 through 3.2 above each establish a separate and independently sufficient basis for denial.

Administrative Appeal

Chronics LLC filed an administrative appeal of the Intent to Deny Marijuana License application and a motion for summary judgment. Chronics LLC argued that because Brock Marchel disclaimed any interest in the limited liability company, Haines-Marchel was the only true party of interest under WAC 314-55-035. Chronics LLC asserted the Spousal Renunciation of Rights Affidavit "changed community property to separate property solely in [Haines-Marchel]." Chronics LLC also argued denial of the license application infringed on the constitutional right of Haines-Marchel to work and earn a living and violated state law on "[m]arital status discrimination in employment."

The Licensing Division filed a cross motion for summary judgment. The Licensing Division asserted that under WAC 314-55-035 and -040, Brock Marchel "remains a true party of interest" and does not "qualify because of his criminal history." The Licensing Division argued the true party of interest for a limited liability company is not based on "a community property interest in the business."

The administrative law judge (ALJ) affirmed the decision of the Licensing Division to deny the application for a retail marijuana license.[8] The "Initial Order on Summary Judgment Motion" sets forth the undisputed facts:

4.6. Chronics applied for a marijuana retailer license during the application window.

_____

[8] The ALJ ruled it did not have authority to address Haines-Marchel's argument that denial of the application violated her constitutional liberty interest to work and be free of marital discrimination.

4.7.     [The Licensing Division] required each applicant to submit a Personal/Criminal History [Form].

4.8.     Chronics is a limited liability company.

4.9.     [The Licensing Division] required each member of a limited liability company and the spouse of each member to submit a Personal/Criminal History [Form].

4.10.    Chronics's only member is Libby Haines-Marchel.

4.11.    Ms. Haines-Marchel is married to Brock Marchel.

4.12.    During the initial interview, Ms. Haines-Marchel disclosed that Mr. Marchel is incarcerated. [The Licensing Division] sought more information from her. Ms. Haines-Marchel subsequently advised [the Licensing Division] that Mr. Marchel is serving a 44.5-year term for a homicide conviction and will be released no earlier than 2038.

4.13.    On or about June 15, 2014, Mr. Marchel signed a Spousal Renunciation of Rights Affidavit, whereby he irrevocably relinquished any ownership or management interest in and any rights to profits from Chronics, and renounced any community property interest in Chronics that might otherwise be attributed to him.

4.14.    Mr. Marchel did not submit a Personal/Criminal History [Form] nor did he provide a copy of his fingerprints. Therefore, [the Licensing Division] was unable to determine whether he had any criminal history in addition to his homicide conviction. [The Licensing Division] assigned to Mr. Marchel 12 criminal history points for the homicide conviction.

4.15.    As a result of the 12 criminal history points assigned to Mr. Marchel and consequently attributed to Chronics, [the Licensing Division] denied Chronics's application for a marijuana retailer license.

The conclusions of law state, in pertinent part:

5.12.    [The Licensing Division] may investigate and consider criminal history when determining whether to grant an applicant a license. RCW 69.50.331(1); WAC 314-55-020[(6)].

5.13.    "A marijuana license must be issued in the name(s) of the true party(ies) of interest." WAC 314-55-035.

7

5.14.    For the purposes of Title 314 WAC, when the "true party of interest" is a limited liability company, the "persons to be qualified" are "all members and their spouses". WAC 314-55-035(1). In other words, the criminal history of both member and spouse are attributed to the limited liability company. Here, Ms. Haines-Marchel is the only member of Chronics, a limited liability company. Mr. Marchel is her spouse. Therefore, he must qualify, or put another way, if his criminal history disqualifies him, it disqualifies Chronics.

5.15.    Chronics argued that [the Licensing Division] is interfering with community property law. But the regulation specifically limits its definition of "true party of interest" to Title 314 WAC. Title 314 WAC addresses [the Licensing Division]'s regulation of tobacco, liquor, and marijuana. It does not address property rights, much less the regulation, definition, or application of property rights. Thus, WAC 314-55-035(1) does not clash with community property law.

5.16.    Chronics argued that Mr. Marchel disclaimed any and all property rights, interest, and control as to Chronics. However, the definition of "true party of interest", or perhaps more correctly "persons to be qualified" is based upon the relationship of the individual to either the limited liability company or a member of the limited liability company. It has nothing to do with property rights, interest, or control. Further, "true party of interest" is specifically distinguishable from "financiers" (WAC 314-55-035(3)) and "persons who exercise control of business" (WAC 314-55-035(4)). Accordingly, that Mr. Marchel disclaimed any and all property rights, interest, and control as to Chronics is not relevant.

5.17.    Therefore, for the purposes of Title 314 [WAC] and for the purposes of Chronics qualifying for licensure, Mr. Marchel is a "true party of interest" and a "person to be qualified" and his criminal history must not disqualify him from licensure.

5.18.    Mr. Marchel's failure to meet the criminal history standards outline[d] in WAC 314-55-040 constitutes a basis for [the Licensing Division] to deny Chronics's marijuana license application. WAC 314-55-050(4).

5.19.    More specifically, a criminal history accumulating eight or more points as described in WAC 314-55-040(1) is grounds for denying a marijuana license application. WAC 314-55-040(1), (3).

5.20.    Here, Mr. Marchel is serving time for a felony conviction. A current felony conviction is assigned 12 criminal history point[s]. WAC 314-55-040(1). So, Mr. Marchel's criminal history points are 12.

Moreover, this conviction is not subject to the exceptions expressed in WAC 314-55-040(3). Further, Mr. Marchel has never submitted a criminal history [form] or submitted to [a Licensing Division] investigation of the criminal history. He may have additional criminal history points for conduct of which [the Licensing Division] is unaware. [The Licensing Division] will not normally issue a license to an applicant with eight or more criminal history points. WAC 314-55-040(1).

5.21.    Here, by virtue of Mr. Marchel's criminal history points, Chronics exceeds the regulatory threshold for a negative criminal history and its application should be denied.

Chronics LLC filed a petition for review with the WSLCB. The petition asserts the Licensing Division exceeded its statutory authority by denying the application of Chronics LLC and violated the procedural due process rights of Haines-Marchel.

The WSLCB affirmed the ALJ decision and entered a "Final Order" adopting the Initial Order on Summary Judgment. The Final Order states, in pertinent part:

The Licensing Division of the Liquor and Cannabis Board issued a Statement of Intent to Deny Marijuana License dated January 12, 2015, asserting that the Applicant's spouse, Brock Marchel, is currently incarcerated, serving a 44.5 year term for a homicide conviction. Although the Applicant's spouse has offered to disavow any interest in the business or proceeds from it, the Applicant and her spouse remain married in the state of Washington. WAC 314-55-035 requires that all true parties of interest must qualify for a license. Mr. Marchel's criminal history makes him ineligible for a marijuana license. In addition, he has not completed the personal/criminal history portion of the application, thus the Board has been unable to determine whether he may have additional disqualifying criminal history.

. . . .

. . . [T]he Administrative Law Judge's Initial Order on Summary Judgment Motion: Denying Applicant's Motion for Summary Judgment and Granting Agency's Cross Motion for Summary Judgment is AFFIRMED and adopted as the Final Order of the Board.

9

Superior Court Appeal

Chronics LLC and Haines-Marchel filed a petition for review in superior court under the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, citing RCW 34.05.570(3) and (2)(c).

RCW 34.05.570(3) provides, in pertinent part:

Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
　　(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
　　(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
　　. . . .
　　(d) The agency has erroneously interpreted or applied the law; [or]
　　. . . .
　　(i) The order is arbitrary or capricious.

RCW 34.05.570(2)(c) states, in pertinent part:

In a proceeding involving review of a rule, the court shall declare the rule invalid only if it finds that: The rule violates constitutional provisions; the rule exceeds the statutory authority of the agency; [or] the rule was adopted without compliance with statutory rule-making procedures.

The petition alleged that under RCW 34.05.570(3), denial of the retail marijuana license unconstitutionally infringed on Haines-Marchel's fundamental right to marry and to pursue a "profession or occupation" and deprived her of a property interest without due process. The petition alleged that under RCW 34.05.570(2)(c), the WSLCB adoption of WAC 314-55-035 and -040 exceeded its statutory authority.

The superior court affirmed the WSLCB Final Order. The court concluded WAC 314-55-035 and -040 were "a narrowly tailored means to further the State's compelling interest" in closely regulating the sale of marijuana and "screening out criminal

10

involvement in the marijuana industry."[9] The court concluded the question of whether a

license to sell marijuana is a property right subject to due process is "moot because

Petitioner was never granted a retail marijuana license."

The court ruled the WSLCB had the statutory authority to adopt WAC 314-55-035

and -040.

> WAC 314-55-035 requires that when a marijuana license is issued to a limited liability company, members' spouses be included as true parties of interest.
> . . . Under WAC 314-55-035, Ms. Haines-Marchel and Mr. Marchel were both true parties of interest in Petitioner's retail marijuana license application and both were required to qualify to hold such a license.
> . . . WAC 314-55-035 and -040 act to screen out the involvement of criminals in the marijuana industry.
> . . . Under WAC 314-55-040, Mr. Marchel's criminal history excluded him from qualifying to hold a retail marijuana license.
> . . . .
> . . . WAC 314-55-035 and -040 are within the scope and intent of Initiative Measure 502, which gave the Board broad authority to take marijuana out of the hands of criminals and bring marijuana under a tightly regulated, state-licensed system, and RCW 69.50.342, which empowers the Board to adopt rules it deems necessary and advisable to accomplish the purposes of and are not inconsistent with the spirit of Chapter 3, Laws of 2013.

Standard of Review

Chronics LLC and Haines-Marchel appeal the superior court order. WAPA

governs review of the final administrative decision and the validity of an agency rule.

Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); Ass'n of Wash.

---

[9] The court found, in pertinent part:
The State of Washington has a compelling interest in closely regulating the sale of marijuana in order to (1) keep the marijuana industry out of the hands of criminals, (2) prevent revenue from the marijuana industry from being used to support criminal enterprises, (3) stop marijuana businesses from being used as a cover for illegal activities, (4) prevent the use of a qualified spouse as a "straw person" to disguise an unqualified spouse's true interest in the marijuana business, and (5) comply with the expectations and interests of the United States Department of Justice in ensuring public safety.

Spirits & Wine Distribs. v. Wash. Liquor Control Bd., 182 Wn.2d 342, 350, 340 P.3d 849 (2015).

When reviewing a final administrative decision, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper, 122 Wn.2d at 402; Brown v. Dep't of Commerce, 184 Wn.2d 509, 544, 359 P.3d 771 (2015). This court sits in the same position as the superior court and we do not give deference to the superior court's rulings. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We review constitutional issues de novo and are not bound by the trial court's conclusions of law. Spirits & Wine, 182 Wn.2d at 350; Utter v. Dep't of Soc. & Health Servs., 140 Wn. App. 293, 300, 165 P.3d 399 (2007). Under RCW 34.05.570(3), we determine only whether the administrative order is unconstitutional, outside the agency's statutory authority, the agency has erroneously applied the law, or the decision is arbitrary and capricious. Ames v. Dep't of Health, Med. Quality Assur. Comm'n, 166 Wn.2d 255, 260, 208 P.3d 549 (2009).

Under RCW 34.05.570(2)(c), an agency rule may be invalidated only if it is unconstitutional, exceeds the agency's statutory rule-making authority, or is arbitrary and capricious. If the administrative decision is on summary judgment, we overlay the WAPA standard of review with the summary judgment standard. Verizon, 164 Wn.2d at 916. "Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law." Verizon, 164 Wn.2d at 916. The moving party bears the burden of demonstrating the invalidity of the denial. RCW 34.05.570(1)(a).

Regulation of Marijuana

In 1923, the legislature enacted a criminal statute making possession and sale of narcotics unlawful. LAWS OF 1923, ch. 47, § 3; State v. Bradshaw, 152 Wn.2d 528, 532, 98 P.3d 1190 (2004). The statute defined "narcotic drugs" as opiates, cocaine, and marijuana. LAWS OF 1923, ch. 47, § 2.

In 1970, Congress passed the "Comprehensive Drug Abuse Prevention and Control Act of 1970,"[10] known as the Controlled Substances Act (CSA), 21 U.S.C. §§ 801-904. "The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzales v. Raich, 545 U.S. 1, 12, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005). The CSA classifies marijuana as a "Schedule I" controlled substance. 21 U.S.C. §§ 802(6), 812(c)(Schedule I)(c)(10). Under the CSA, it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1); see also Gonzales, 545 U.S. at 14; United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 489-90, 121 S. Ct. 1711, 149 L. Ed. 2d 722 (2001). The sale of marijuana is a felony under federal law. 21 U.S.C. §§ 841(a)(1)(i), (b)(1)(A)(vii), (b)(1)(B)(vii), (b)(1)(D); 18 U.S.C. §§ 3559(a)(3)-(5).

In 1971, Washington adopted the Uniform Controlled Substances Act, chapter 69.50 RCW. LAWS OF 1971, 1st Ex. Sess., ch. 308. The Uniform Controlled Substances Act paralleled the CSA. Seeley v. State, 132 Wn.2d 776, 790-91, 940 P.2d 604 (1997). Under the Uniform Controlled Substances Act, it was a crime to "manufacture, deliver, or possess with intent to manufacture or deliver" marijuana.

---

[10] Pub. L. No. 91-513, 84 Stat. 1236 (1970).

Former RCW 69.50.401(a)(1)(i), .204(d)(10) (1971); Cannabis Action Coal. v. City of Kent, 183 Wn.2d 219, 222, 351 P.3d 151 (2015).

In 1998, Washington voters approved Initiative Measure 692 legalizing the medical use of marijuana. LAWS OF 1999, ch. 2.

Initiative 502

In November 2012, Washington voters approved Initiative Measure 502. LAWS OF 2013, ch. 3, codified as part of chapter 69.50 RCW. Initiative 502 legalizes the possession of small quantities of marijuana for individuals over 21 years old[11] and authorizes regulation and a "system for the licensed distribution of recreational marijuana." Cannabis Action Coal., 183 Wn.2d at 222-23; No on I-502 v. Wash. NORML, 193 Wn. App. 368, 370, 372 P.3d 160 (2016). A stated purpose of Initiative 502 is to take "marijuana out of the hands of illegal drug organizations and bring[ ] it under a tightly regulated, state-licensed system similar to that for controlling hard alcohol." LAWS OF 2013, ch. 3, § 1. The Laws of 2013, chapter 3, section 1 state:

> The people intend to stop treating adult marijuana use as a crime and try a new approach that:
>    (1) Allows law enforcement resources to be focused on violent and property crimes;
>    (2) Generates new state and local tax revenue for education, health care, research, and substance abuse prevention; and
>    (3) Takes marijuana out of the hands of illegal drug organizations and brings it under a tightly regulated, state-licensed system similar to that for controlling hard alcohol.
>    This measure authorizes the state liquor control board to regulate and tax marijuana for persons twenty-one years of age and older, and add a new threshold for driving under the influence of marijuana.

Consistent with Initiative 502, RCW 69.50.360 states, in pertinent part:

> The following acts, when performed by a validly licensed marijuana retailer or employee of a validly licensed retail outlet in compliance with rules

---

[11] RCW 69.50.4013(3)(a).

14

adopted by the state liquor and cannabis board to implement and enforce chapter 3, Laws of 2013, do not constitute criminal or civil offenses under Washington state law:

(1) Purchase and receipt of marijuana concentrates, useable marijuana, or marijuana-infused products that have been properly packaged and labeled from a marijuana processor validly licensed under this chapter;

. . . .

(3) Delivery, distribution, and sale, on the premises of the retail outlet, of any combination of the following amounts of marijuana concentrates, useable marijuana, or marijuana-infused product to any person twenty-one years of age or older:

(a) One ounce of useable marijuana;
(b) Sixteen ounces of marijuana-infused product in solid form; [or]
(c) Seventy-two ounces of marijuana-infused product in liquid form.

Initiative 502 is codified as part of chapter 69.50 RCW. RCW 69.50.325(3)(a) states, "Every marijuana retailer's license shall be issued in the name of the applicant." RCW 69.50.331(1)(b)(iii) states, "No license of any kind may be issued to . . . [a] partnership, employee cooperative, association, nonprofit corporation, or corporation . . . unless all of the members thereof are qualified to obtain a license as provided in this section." RCW 69.50.325(3)(a) states, in pertinent part:

There shall be a marijuana retailer's license to sell marijuana concentrates, useable marijuana, and marijuana-infused products at retail in retail outlets, regulated by the state liquor and cannabis board and subject to annual renewal. The possession, delivery, distribution, and sale of marijuana concentrates, useable marijuana, and marijuana-infused products in accordance with the provisions of this chapter and the rules adopted to implement and enforce it, by a validly licensed marijuana retailer, shall not be a criminal or civil offense under Washington state law. Every marijuana retailer's license shall be issued in the name of the applicant, shall specify the location of the retail outlet the licensee intends to operate, which must be within the state of Washington, and the holder thereof shall not allow any other person to use the license.

RCW 69.50.331(1)(a) expressly states that "[s]ubject to the provisions of this section, the state liquor and cannabis board may, in its discretion, grant or deny the . . . license applied for." RCW 69.50.331(1)(a) states the WSLCB "may consider any prior

15

criminal conduct of the applicant" in determining whether to deny an application for a license. RCW 69.50.331(1)(a) states, in pertinent part:

> For the purpose of reviewing any application for a license and for considering the denial, suspension, revocation, or renewal or denial thereof, of any license, the state liquor and cannabis board may consider any prior criminal conduct of the applicant including an administrative violation history record with the state liquor and cannabis board and a criminal history record information check. The state liquor and cannabis board may submit the criminal history record information check to the Washington state patrol and to the identification division of the federal bureau of investigation in order that these agencies may search their records for prior arrests and convictions of the individual or individuals who filled out the forms.

The legislature authorizes the WSLCB to adopt regulations and a system to implement Initiative 502 and legalize issuance of a retail marijuana license. RCW 69.50.342(1). RCW 69.50.342(1) gives the WSLCB broad authority to adopt rules that are "not inconsistent with the spirit of chapter 3, Laws of 2013 as are deemed necessary or advisable."

Adoption of Chapter 314-55 WAC

The WSLCB adopted rules in November 2013. WAC 314-55-005 (Wash. St. Reg. 13-21-104, filed Oct. 21, 2013, effective Nov. 21, 2013). Chapter 314-55 WAC governs the requirements for a retail marijuana license. WAC 314-55-010(1) defines a "marijuana license applicant" as "any person or business entity who is considered by the WSLCB as a true party of interest in a marijuana license, as outlined in WAC 314-55-035." A "marijuana licensee" is "any person or entity that holds a marijuana license, or any person or entity who is a true party of interest in a marijuana license, as outlined in WAC 314-55-035." WAC 314-55-010(15).

If the applicant meets the minimum requirements for a retail marijuana license, the Licensing Division conducts a comprehensive investigation to verify "the true party(ies) of interest," including criminal history based on submission of a Personal/Criminal History Form. WAC 314-55-020(5)-(7). WAC 314-55-020 states, in pertinent part:

> **WAC 314-55-020 Marijuana license qualifications and application process.** Each marijuana license application is unique and investigated individually. The WSLCB may inquire and request documents regarding all matters in connection with the marijuana license application. . . .
>
> . . . .
>
> (5) The WSLCB will verify that the proposed business meets the minimum requirements for the type of marijuana license requested.
>
> (6) The WSLCB will conduct an investigation of the applicants' criminal history and administrative violation history, per WAC 314-55-040 and 314-55-045.[12]
>
> (a) The criminal history background check will consist of completion of a personal/criminal history form provided by the WSLCB and submission of fingerprints to a vendor approved by the WSLCB. . . .
>
> . . . .
>
> (7) The WSLCB will conduct a financial investigation in order to verify the source of funds used for the acquisition and startup of the business, the applicants' right to the real and personal property, and to verify the true party(ies) of interest.[13]

WAC 314-55-035 identifies "What persons or entities have to qualify for a marijuana license."[14] WAC 314-55-035 states, "A marijuana license must be issued in the name(s) of the true party(ies) of interest." WAC 314-55-035(1) defines "true party of

---

[12] WAC 314-55-045 identifies "What marijuana law or rule violation history might prevent an applicant from receiving a marijuana license." (Boldface omitted.)

[13] Boldface in original.

[14] Boldface omitted.

interest" and the persons who must qualify. WAC 314-55-035(1) states:

**True parties of interest** - For purposes of this title, "true party of interest" means:

| True party of interest | Persons to be qualified |
|---|---|
| Sole proprietorship | Sole proprietor and spouse. |
| General partnership | All partners and spouses. |
| Limited partnership, limited liability partnership, or limited liability limited partnership | • All general partners and their spouses.<br>• All limited partners and their spouses. |
| Limited liability company | • All members and their spouses.<br>• All managers and their spouses. |
| Privately held corporation | • All corporate officers (or persons with equivalent title) and their spouses.<br>• All stockholders and their spouses. |
| Publicly held corporation | All corporate officers (or persons with equivalent title) and their spouses.<br><br>All stockholders and their spouses. |
| Multilevel ownership structures | All persons and entities that make up the ownership structure (and their spouses). |
| Any entity or person (inclusive of **financiers**) that are expecting a percentage of the profits in exchange for a monetary loan or expertise. Financial institutions are not considered true parties of interest. | Any entity or person who is in receipt of, or has the right to receive, a percentage of the gross or net profit from the licensed business during any full or partial calendar or fiscal year.<br><br>Any entity or person who exercises control over the licensed business in exchange for money or expertise.<br><br>For the purposes of this chapter:<br><br>• "Gross profit" includes the entire gross receipts from all |

| | sales and services made in, upon, or from the licensed business. |
| | • "Net profit" means gross sales minus cost of goods sold. |
| Nonprofit corporations | All individuals and spouses, and entities having membership rights in accordance with the provisions of the articles of incorporation or the bylaws.[15] |

WAC 314-55-040 addresses "What criminal history might prevent a marijuana license applicant from receiving or keeping a marijuana license."[16] WAC 314-55-040(1) states, in pertinent part:

The WSLCB will not normally issue a marijuana license or renew a license to an applicant who has accumulated eight or more points as indicated below:

| Description | Time period during which points will be assigned | Points assigned |
|---|---|---|
| Felony conviction | Ten years | 12 points |
| Gross misdemeanor conviction | Three years | 5 points |
| Misdemeanor conviction | Three Years | 4 points |
| Currently under federal or state supervision for a felony conviction | n/a | 8 points |
| Nondisclosure of any of the above | n/a | 4 points each.[17] |

<u>Constitutional Right to Marry and Contract</u>

Chronics LLC and Haines-Marchel contend WAC 314-55-035 violates her constitutional right to marry and the decision to deny the retail marijuana license violates her right to contract.

---

[15] Boldface in original.

[16] Boldface omitted.

[17] Boldface in original.

We review constitutional issues de novo as a matter of law. Spirits & Wine, 182 Wn.2d at 350. We presume an agency's regulations are constitutional. Campbell v. Tacoma Pub. Sch. Dist. No. 10, 192 Wn. App. 874, 883, 370 P.3d 33 (2016); Wash. Hosp. Ass'n v. Dep't of Health, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015).

Where, as here, the legislature specifically delegates rule-making power to an agency, the regulations are presumed valid. Anderson, Leech & Morse, Inc. v. Wash. Liquor Control Bd., 89 Wn.2d 688, 695, 575 P.2d 221 (1978); St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wn.2d 690, 702, 801 P.2d 212 (1990). A party may assert either a facial or an as-applied challenge to a regulation.

To prevail on a facial challenge, the party must show "no set of circumstances" where the regulation "as currently written . . . can be constitutionally applied." City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). To prevail on an as-applied challenge, the party must prove an otherwise valid regulation is unconstitutional as applied to that individual. Moore, 151 Wn.2d at 668-69.

Chronics LLC and Haines-Marchel do not assert a facial challenge to WAC 314-55-035. Haines-Marchel contends that as applied, WAC 314-55-035 violates her constitutional right to marry. In an as-applied challenge, the party alleges the regulation is unconstitutional "in the specific context of the party's actions or intended actions." Moore, 151 Wn.2d at 668-69; City of Seattle v. Evans, 184 Wn.2d 856, 862, 366 P.3d 906 (2015).

The right to marry is a fundamental substantive due process right under the Fourteenth Amendment to the United States Constitution. Obergefell v. Hodges, ___ U.S. ___, 135 S. Ct. 2584, 2597-98, 192 L. Ed. 2d 609 (2015); Zablocki v. Redhail, 434

U.S. 374, 383, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978); Loving v. Virginia, 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); City of Bremerton v. Widell, 146 Wn.2d 561, 575-76, 51 P.3d 733 (2002). But not "every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny." Zablocki, 434 U.S. at 386; Parsons v. County of Del Norte, 728 F.2d 1234, 1237 (9th Cir. 1984).

We apply a two-part test to determine whether state action unconstitutionally infringes on the right of marriage. Widell, 146 Wn.2d at 579. First, " 'a court must ask whether the policy or action is a direct or substantial interference with the right of marriage.' " Widell, 146 Wn.2d at 579 (quoting Montgomery v. Carr, 101 F.3d 1117, 1124 (6th Cir. 1996)). " '[I]f the policy or action is a direct and substantial interference with the right of marriage,' " strict scrutiny applies. Widell, 146 Wn.2d at 579 (quoting Carr, 101 F.3d at 1124). Otherwise, we apply a " 'rational basis scrutiny.' " Widell, 146 Wn.2d at 579 (quoting Carr, 101 F.3d at 1124); Parsons, 728 F.2d at 1237. "[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." Zablocki, 434 U.S. at 386; see Califano v. Jobst, 434 U.S. 47, 54, 98 S. Ct. 95, 54 L. Ed. 2d 228 (1977).

Chronics LLC and Haines-Marchel assert denial of the application for a retail marijuana license directly interferes with the right to marry. Chronics LLC and Haines-Marchel assert the decision was "solely based on her marriage to Brock." The record does not support this argument. The record establishes the WSLCB denied the application of Chronics LLC because Brock is a true party of interest who did not qualify for a retail marijuana license.

A retail marijuana license must be issued in the name of the applicant. Under WAC 314-55-035(1), if the applicant is a limited liability company, all true parties of interest must qualify. The true parties of interest for a limited liability company are all members and the spouses of each member. WAC 314-55-035(1). Because WAC 314-55-035 does not interfere with the right of Haines-Marchel to marry or remain married to the person of her choosing, it does not place a "direct and substantial" burden on the right of marriage, and the rational basis test applies. Widell, 146 Wn.2d at 579-80.

Under the rational basis test, WAC 314-55-035 need only be "rationally related to a legitimate state interest." Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 222, 143 P.3d 571 (2006).

> In determining whether a rational relationship exists, a court may assume the existence of any necessary state of facts which it can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest.

Amunrud, 158 Wn.2d at 222; Heller v. Doe, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993).

There is no dispute that the WSLCB has a legitimate interest in conducting a comprehensive investigation to verify the true parties of interest and determine whether criminal history disqualifies the applicant. See RCW 69.50.331(1)(b). Because WAC 314-55-035 is rationally related to the legitimate interest of the State to legalize and strictly control issuance of a retail marijuana license, Chronics LLC and Haines-Marchel cannot show that as applied, WAC 314-55-035 is unconstitutional.

Levinson v. Horse Racing Commission, 48 Wn. App. 822, 740 P.2d 898 (1987), is distinguishable. In Levinson, the Washington Horse Racing Commission suspended a "racehorse ownership license" after learning the owner's spouse had a 12-year-old

22

narcotics conviction. Levinson, 48 Wn. App. at 823-24. Under former WAC 260-12-160 (1980), an individual convicted of selling narcotics was barred from horse racing. Former WAC 260-40-160(3) (1961) stated, "[N]o entry [of a horse in a horse race] shall be accepted from husband or wife, while either is disqualified." The court concluded former WAC 260-12-160 unconstitutionally infringed on Levinson's right to marry because the regulation was "very sweeping" and applied to individuals "who many years after their conviction still cannot attend racing events, and cannot get ownership licenses." Levinson, 48 Wn. App. at 826. But here, unlike in Levinson, WAC 314-55-040 does not categorically disqualify a true party of interest based on criminal history. WAC 314-55-040(3) states:

> The WSLCB may not issue a marijuana license to anyone who has accumulated eight or more points as referenced above. This is a discretionary threshold and it is further recommended that the following exceptions to this standard be applied:
> **Exception to criminal history point assignment.**
> (a) Prior to initial license application, two federal or state misdemeanor convictions for the possession only of marijuana within the previous three years may not be applicable to the criminal history points accumulated. All criminal history must be reported on the personal/criminal history form.
> (i) Regardless of applicability, failure to disclose full criminal history will result in point accumulation;
> (ii) State misdemeanor possession convictions accrued after December 6, 2013, exceeding the allowable amounts of marijuana, usable marijuana, and marijuana-infused products described in chapter 69.50 RCW shall count toward criminal history point accumulation.
> (b) Prior to initial license application, any single state or federal conviction for the growing, possession, or sale of marijuana will be considered for mitigation on an individual basis. Mitigation will be considered based on the quantity of product involved and other circumstances surrounding the conviction.[18]

The cases Haines-Marchel cites to argue denial of the application under WAC 314-55-035 violates the Washington Law Against Discrimination, chapter 49.60 RCW,

---

18 Boldface in original.

are inapposite. Magula v. Benton Franklin Title Co., Inc., 131 Wn.2d 171, 930 P.2d 307 (1997), and Kastanis v. Educational Employees Credit Union, 122 Wn.2d 483, 859 P.2d 26, 865 P.2d 507 (1993), address claims filed under RCW 49.60.180 against former employers for employment discrimination based on marital status. See RCW 49.60.180 (it is "unfair practice for any employer" to refuse to hire, to discharge, or to discriminate against any person based on a number of protected categories, including "marital status"). WAC 314-55-035 does not discriminate based on an individual's legal marital status.

Chronics LLC and Haines-Marchel also claim denial of the application violated the constitutional right of Haines-Marchel to contract by disregarding the Spousal Renunciation of Rights Affidavit executed by Brock in determining whether Brock qualified under WAC 314-55-035.

The Spousal Renunciation of Rights Affidavit states, in pertinent part:

> It is my intention to knowingly and willingly make this agreement that I will relinquish, irrevocably deny and renounce any and 'all' ownership interest and management decisions in Rock Island Chronics.
> It is also my understanding spouses [sic] may agree to change the character of their property from community to separate property. This is my intention.
> I agree to renounce and convey my rights in claiming to have a right to the companies [sic] asset acquisition, profits, bank accounts, sales revenue, or the profits she makes in the sale of the business as a whole.
> I also agree to convey and renounce my rights within the color of the law that the Washington State Liquor Control Board deems necessary in this process.

We conclude the Spousal Renunciation of Rights Affidavit is not a binding contract. "[U]nless both parties are bound by mutual promises or considerations, neither is bound." Lande v. S. Kitsap Sch. Dist. No. 402, 2 Wn. App. 468, 477, 469 P.2d 982 (1970); Larkins v. St. Paul & Tacoma Lumber Co., 35 Wn.2d 711, 722, 214 P.2d

700 (1950). Further, "[e]very contract must be supported by a consideration to be enforceable." King v. Riveland, 125 Wn.2d 500, 505, 886 P.2d 160 (1994); SAK & Assocs., Inc. v. Ferguson Constr., Inc., 189 Wn. App. 405, 411, 357 P.3d 671 (2015). "Consideration is a bargained-for exchange of promises" or " 'any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange.' " Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 833, 100 P.3d 791 (2004) (quoting King, 125 Wn.2d at 505). The unilateral intent in the Spousal Renunciation of Rights Affidavit to "relinquish, irrevocably deny and renounce any and 'all' ownership interest and management decisions in Rock Island Chronics" is not a mutually binding agreement supported by consideration.

## Due Process Liberty and Property Interest

Haines-Marchel asserts that as applied, WAC 314-55-035 violates her right to pursue an occupation. The right to pursue an occupation or profession is a protected liberty interest. Conn v. Gabbert, 526 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999). The "Due Process Clause" of the Fourteenth Amendment " 'includes some generalized due process right to choose one's field of private employment.' " Amunrud, 158 Wn.2d at 220 (quoting Conn, 526 U.S. at 291-92); Dittman v. California, 191 F.3d 1020, 1029 (9th Cir. 1999). But that right is " 'subject to reasonable government regulation.' " Amunrud, 158 Wn.2d at 220[19] (quoting Conn, 526 U.S. at 292). We apply the rational basis test to regulations alleged to burden the right to employment. Amunrud, 158 Wn.2d at 222 ("Because the right to pursue a trade or profession is a protected right but not a fundamental right, we apply a rational basis test."); Johnson v. Dep't of Fish & Wildlife, 175 Wn. App. 765, 775, 305 P.3d 1130 (2013). We conclude

_____

[19] Emphasis omitted.

WAC 314-55-035 and WAC 314-55-040 are rationally related to a legitimate state interest and do not violate Haines-Marchel's right to purse an occupation.

Haines-Marchel claims that because the WSLCB selected her application for processing, she acquired a property right to issuance of a marijuana license, and denial of the application violated due process.

To state a claim for deprivation of property without due process of law, a party must identify a property interest protected by the Due Process Clause. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); Bang Nguyen v. Dep't of Health, Med. Quality Assur. Comm'n, 144 Wn.2d 516, 522-23, 29 P.3d 689 (2001).

Haines-Marchel relies on Wedges/Ledges of California, Inc. v. City of Phoenix, Arizona, 24 F.3d 56 (9th Cir. 1994), to assert Chronics LLC had a property interest in the issuance of a marijuana license. In Wedges/Ledges, the Phoenix City Code (PCC) that stated a game license tag " 'shall be issued' " to certain coin-operated game machines made issuance of licenses mandatory and eliminated the city's discretion to deny licenses. Wedges/Ledges, 24 F.3d at 63 (quoting former PCC § 7-28(c)(1) (1986-1987)). The court concluded the city code created a property interest in issuance of a license because it was an " 'articulable standard' sufficient to give rise to a legitimate claim of entitlement." Wedges/Ledges, 24 F.3d at 63-64 (quoting Parks v. Watson, 715 F.2d 646, 657 (9th Cir. 1983)). The court held, "[A]n individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.' " Wedges/Ledges, 24 F.3d at 62 (quoting

<u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

Here, unlike in <u>Wedges/Ledges</u>, Haines-Marchel cannot show Chronics LLC had " 'a legitimate claim of entitlement to' " the issuance of a retail marijuana license. <u>Town of Castle Rock, Colo. v. Gonzales</u>, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (quoting <u>Roth</u>, 408 U.S. at 577). The issuance of a marijuana license is not mandatory. RCW 69.50.331 expressly gives the WSLCB discretion to deny an application for a marijuana license. RCW 69.50.331(1)(a) states, in pertinent part, that "[s]ubject to the provisions of this section, the state liquor and cannabis board may, in its discretion, grant or deny the . . . license applied for." Further, the "issuance of any license by the board shall not be construed as granting a vested right in any of the privileges so conferred." WAC 314-12-010; <u>see also</u> <u>Jow Sin Quan v. Wash. Liquor Control Bd.</u>, 69 Wn.2d 373, 382, 418 P.2d 424 (1966) (license to sell intoxicants "does not become a vested property right upon the issuance thereof"). A license is "a temporary permit, in the nature of a privilege, to engage in a business that would otherwise be unlawful." <u>Jow Sin Quan</u>, 69 Wn.2d at 382; <u>see also</u> RCW 69.50.325(3).

Because Chronics LLC and Haines-Marchel do not have a property interest in the issuance of a marijuana license, the WSLCB did not violate due process by denying the application for a license.

<u>Statutory Authority to Adopt WAC 314-55-035 and WAC 314-55-040</u>

Chronics LLC and Haines-Marchel cite RCW 34.05.570(2)(c) and RCW 34.05.570(3) to argue the WSLCB exceeded its statutory authority in adopting WAC 314-55-035 and WAC 314-55-040 and denying the application.

We review the validity of an agency's rule de novo. <u>Local 2916, IAFF v. Pub. Emp't Relations Comm'n</u>, 128 Wn.2d 375, 379, 907 P.2d 1204 (1995). The validity of a rule is governed by RCW 34.05.570(2)(c). We determine the extent of an administrative agency's rule making authority de novo as a matter of law. <u>Local 2916</u>, 128 Wn.2d at 379; <u>Spirits & Wine</u>, 182 Wn.2d at 350; <u>Wash. Hosp. Ass'n</u>, 183 Wn.2d at 595. The authority of an administrative agency is " 'limited to that which is expressly granted by statute or necessarily implied therein.' " <u>Conway v. Dep't of Soc. & Health Servs.</u>, 131 Wn. App. 406, 419, 120 P.3d 130 (2005) (quoting <u>McGuire v. State</u>, 58 Wn. App. 195, 198, 791 P.2d 929 (1990)); <u>Anderson, Leech & Morse</u>, 89 Wn.2d at 694. A rule is invalid if it conflicts with the intent and purpose of the legislation, exceeds the statutory authority of the agency, or is arbitrary and capricious. RCW 34.05.570(2)(c). Under RCW 34.05.570(2)(c), the court "shall declare the rule invalid" if it finds the rule exceeds the statutory authority of the agency. " '[R]egulation[s] will not be struck down unless compelling reasons are presented sufficient to show the scheme is in conflict with the intent and purpose of the legislation.' " <u>Hi-Starr, Inc. v. Liquor Control Bd.</u>, 106 Wn.2d 455, 459, 722 P.2d 808 (1986)[20] (quoting <u>Anderson, Leech & Morse</u>, 89 Wn.2d at 695).

Where the legislature specifically delegates the power to adopt regulations, those regulations are presumed to be valid. <u>St. Francis</u>, 115 Wn.2d at 702. "The burden of overcoming this presumption rests on the challenger, and judicial review will be limited to a determination of whether the regulation in question is reasonably consistent with the statute being implemented." <u>St. Francis</u>, 115 Wn.2d at 702. Because administrative agencies are " 'creatures of the legislature without inherent or common-law powers,' " an agency has only those powers that are conferred either expressly or by necessary

---

[20] (Alterations in original) (internal quotation marks omitted).

implication. Human Rights Comm'n v. Cheney Sch. Dist. No. 30, 97 Wn.2d 118, 125, 641 P.2d 163 (1982) (quoting State v. Munson, 23 Wn. App. 522, 524, 597 P.2d 440 (1979)).

Statutory interpretation is a question of law we review de novo. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Our primary goal in interpreting statutes is to ascertain and give effect to legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, we give effect to that plain meaning. Campbell & Gwinn, 146 Wn.2d at 9-10.

Under RCW 34.05.570(3), we review the legal determination of the WSLCB under the error of law standard. Verizon, 164 Wn.2d at 915. This standard accords substantial weight to an agency's interpretation of a statute within its expertise and an agency's interpretation of rules that the agency promulgated. Verizon, 164 Wn.2d at 915.

Haines-Marchel cannot show the adoption of WAC 314-55-035 or WAC 314-55-040 is in conflict with the intent and purpose of the statute or that the WSLCB acted outside its statutory authority.

The adoption of WAC 314-55-035 and -040 is consistent with the purpose and intent of the statute. Initiative 502 unambiguously states the purpose of the initiative is to take "marijuana out of the hands of illegal drug organizations and bring[ ] it under a tightly regulated, state-licensed system similar to that for controlling hard alcohol." LAWS OF 2013, ch. 3, § 1. RCW 69.50.325(3)(a) states that the WSLCB shall regulate the

marijuana retailer licenses and that "[e]very marijuana retailer's license shall be issued in the name of the applicant."

Under RCW 69.50.331(1)(b)(iii), "[n]o license of any kind may be issued to" a corporation "unless all of the members thereof are qualified to obtain a license as provided in this section." RCW 69.50.331(1)(a) expressly states that "[s]ubject to the provisions of this section, the state liquor and cannabis board may, in its discretion, grant or deny the renewal or license applied for." RCW 69.50.331(1)(a) unambiguously states the WSLCB "may consider any prior criminal conduct of the applicant" in determining whether to deny an application for a license. RCW 69.50.331(1)(a) states, in pertinent part:

> For the purpose of reviewing any application for a license and for considering the denial, suspension, revocation, or renewal or denial thereof, of any license, the state liquor and cannabis board may consider any prior criminal conduct of the applicant including an administrative violation history record with the state liquor and cannabis board and a criminal history record information check. The state liquor and cannabis board may submit the criminal history record information check to the Washington state patrol and to the identification division of the federal bureau of investigation in order that these agencies may search their records for prior arrests and convictions of the individual or individuals who filled out the forms.

RCW 69.50.342(1) and .345(1) expressly give the WSLCB the authority to adopt rules governing the investigation and approval of an application for a retail marijuana license. RCW 69.50.342(1) authorizes the WSLCB to adopt regulations "[f]or the purpose of carrying into effect the provisions of chapter 3, Laws of 2013 according to their true intent or of supplying any deficiency therein," including regulations governing application for marijuana licenses. RCW 69.50.342(1) grants the WSLCB broad authority to adopt rules that are "not inconsistent with the spirit of chapter 3, Laws of

2013 as are deemed necessary or advisable."[21] RCW 69.50.342(1) states, in pertinent part:

> For the purpose of carrying into effect the provisions of chapter 3, Laws of 2013 according to their true intent or of supplying any deficiency therein, the state liquor and cannabis board may adopt rules not inconsistent with the spirit of chapter 3, Laws of 2013 as are deemed necessary or advisable. Without limiting the generality of the preceding sentence, the state liquor and cannabis board is empowered to adopt rules regarding the following:
>
> . . . .
> (i) Application . . . for licenses issued under this chapter.

RCW 69.50.345(1) states the WSLCB "must adopt rules that establish the procedures and criteria necessary to implement the . . . [l]icensing of . . . marijuana retailers." WAC 314-55-035 and -040 are consistent with the purpose of carrying out the intent of Initiative 502. We hold the WSLCB did not exceed its authority in adopting WAC 314-55-035 and WAC 314-55-040.

We also note that the regulations are nearly identical to the regulations governing the issuance of licenses to sell hard alcohol. Like WAC 314-55-035, WAC 314-07-035 provides that "a liquor license must be issued in the name(s) of the true party(ies) of interest." Like WAC 314-55-035(1), where the applicant for a liquor license is a limited liability company, WAC 314-07-035(1) defines the true parties of interest to be qualified as "[a]ll members . . . with more than 10% interest in the LLC and spouses" and "[a]ll managers . . . and their spouses."[22] Likewise, the "point system" used to determine

---

[21] See also RCW 69.50.345(1) (WSLCB "must adopt rules that establish the procedures and criteria necessary to implement the . . . [l]icensing of . . . marijuana retailers.")

[22] The regulatory scheme governing the issuance of gambling licenses, chapter 230-03 WAC, is also consistent with WAC 314-55-035. WAC 230-03-065(1) states:

> Applicants' spouses must also meet the qualifications to hold a gambling license when married persons who maintain a marital community apply for or hold a license to operate gambling activities. This includes, but is not limited to, owners and substantial interest holders of commercial gambling establishments.

whether an individual's criminal history bars them from receiving a marijuana license is also used to determine if an individual is eligible for a liquor license. Compare WAC 314-55-040(1) with WAC 314-07-040(1).

Haines-Marchel does not carry her burden to establish that the adoption of WAC 314-55-035 or WAC 314-55-040 is inconsistent with the intent of the statute or that the WSLCB exceeded its authority in denying the Chronics LLC application.

We affirm.

WE CONCUR: